## The State *v.* Ayer.

An indictment under § 7, ch. 215, R. S., is not double, in which the prisoner is charged with breaking and entering a shop, in the night time, with intent to steal, and actually stealing.

Where leather is delivered to a person, to be manufactured into shoes, which are to be delivered to the employer, while the shoes are in the hands of the manufacturer, they may be laid to be his property, in an indictment for stealing them.

A verdict for the State will not be set aside, merely because a juror heard a witness for the prosecution, in a bar-room, use harsh language against the prisoner; the witness not attempting, nor being employed to influence the juror.

The affidavit of a juror is admissible in exculpation of himself, and to sustain the verdict, but not to impeach it.

Upon a motion to set aside a verdict for the State, an affidavit was offered, tending to prove that one of the jurors was not impartial, but had made statements injurious to the prisoner before the trial, but this was denied by the affidavit of the juror. *Held,* that there was no ground for setting aside the verdict.

INDICTMENT, in which the respondent was charged with breaking and entering in the night time, into the shop of J. G. Eaton, with intent to steal the goods and chattels of said Eaton, and actually stealing a quantity of shoes, of the goods and chattels of said Eaton.

The evidence in relation to the ownership of the shoes, was as follows : Eaton was a manufacturer of shoes for other per-

sons, and the usual course of his business was, to take from the shop of his employer, the materials for a certain number of pairs of shoes, which were then charged to him; after making up the shoes, he returned them to his employer, and was then credited with the materials, and either paid or credited with the agreed price of the making. The materials for the shoes shown to be stolen, were furnished to Eaton in this way, and had been made up by him.

The court instructed the jury, that upon this evidence, which was not controverted, the said Eaton had a lien upon the shoes, for the price he was to receive for making them, and that this lien constituted a special property in the shoes, and this was therefore sufficient proof of the allegation in the indictment, that the shoes were the goods and chattels of Eaton.

The court further instructed the jury, that if the property was not Eaton's, they might convict the defendant of breaking and entering with intent to steal only; and that they might infer an intent to steal the goods of Eaton, from the fact of the breaking and entering his shop, and actually stealing the goods of another person, without any other proof of such intention. To these instructions, the defendant excepted.

The jury found a general verdict of *guilty*, which the respondent moved to set aside, and for a new trial, by reason of said exceptions, and also because, as he alleged, one or more of the jury, had formed and expressed an opinion, that the respondent was guilty before his trial; and, because statements tending manifestly, to prejudice the minds of all who heard them, were publicly as well as privately made, by witnesses for the State, and others interested for the prosecution, in the presence and hearing of one or more of the jury, pending the trial.

Upon this point, there was evidence that one Richard Bailey, a witness for the prosecution, in the presence of a Mr. Brown, of Nottingham, one of the jury, said, that he had come to testify against some of the lying scamps that Ayer had for witnesses, that his store had been broken open, and goods stolen from it, that he did not think Ayer helped break into the store, but had no doubt he knew all about it, for he was the head of the gang,

The State *v.* Ayer.

and that this was not the first time Ayer had stolen shoes. Bailey then turned round, saw the juror, and ceased speaking.

Bailey testified, that he made some remarks about Ayer, in the presence of a number of persons, but did not know that any juror was present, that he afterwards asked the juror if he remembered it, but he said he could not recollect anything about it, as he did not take any notice of the conversation.

In relation to the above evidence, Mr. Hatch, the solicitor for the county, suggested that Bailey's statements about Ayer, were made before Bailey testified at the trial, that Ayer's counsel made no exception then, nor until after the verdict, and that Mr. McMurphy, who testified to Bailey's statements, was of counsel for the defendant.

There was also evidence, from one Jonathan J. French, that Carleton Cotton, one of the jury that tried Ayer, before the trial commenced, said, he understood there was but one of the jury that tried him before, who did not agree, and that one ought to be whipped, because he had not agreed to a conviction, and saved the expense of another trial.

Cotton testified, that he did not say, that the juror who did not agree " ought to be whipped," or anything to that effect, that he was thinking of the expense of the trial, that he had no acquaintance with Ayer, and had no opinion about his guilt, or innocence, that French must have misapprehended what he said, and that French had admitted to him, in the presence of Mr. George Marston, that he must have misunderstood him.

Cotton was then examined as to what took place after the jury had retired, and his statements there how the jury stood on the former trial, and he answered that after the jury had balloted once, he was asked how the former jury stood, and said he was informed they stood eleven to one. All the above evidence was contained in affidavits.

*Henry F. French*, for the prisoner.

1. In support of our motion in arrest of judgment, we contend that no judgment can be rendered, because it does not appear of what offence the defendant was convicted.

The indictment describes *three* offences in one count, to wit ;

1.   Breaking *and* entering a shop in the night, with intent to commit a larceny.

2.   Breaking *or* entering, in the night, with intent to commit a larceny.

3.   Breaking *or* entering, in the night, *and* committing a larceny.

No exception having been taken, before trial, to the form of the indictment, perhaps it was competent for the jury to find the respondent guilty of either, according to the proof; but their verdict was general.   3 Ch. Cr. L., 1113.

Or the State's counsel might have entered a *nol. pros.*, as to a part, but he did not.

These three offences, subject the respondent to different penalties, under sections 7, 8, and 9, of ch. 215, Rev. Stat., — section 7, providing imprisonment from *three to ten* years — section 8, *one to seven* years — section 9, *not exceeding five* years.

The discretion of the court in fixing the terms of imprisonment, is a *judicial* discretion regulated by the indicated intention of the statute, and therefore the court must know for *which* offence to pass judgment, or none can be rendered.

Two distinct and separate offences cannot be regularly laid in one count of an indictment, and if they be so laid, it is good cause for arresting judgment.   *State* v. *Nelson*, 8 N. H. Rep., 163.

It has been held in Massachusetts, that a charge of *behaving rudely in a meeting-house on the Lord's day*, for which the statute prescribed a punishment by fine, not more than forty, nor less than five shillings, and a charge for *interrupting public worship*, punishable by another section of the same statute by fine not exceeding ten pounds nor less than twenty shillings, were improperly joined in one count, and judgment was arrested for that cause.   *Commonwealth* v. *Symonds*, 2 Mass., 163.

" There are cases, in which a single count in an indictment, may allege all the circumstances necessary to constitute two different crimes.   But that happens *only* in cases where the offence described in the count is a complicated offence, comprehending

in itself divers circumstances, each of which is an offence; as in an indictment for murder, which necessarily comprehends all the circumstances that go to constitute manslaughter; and an indictment for burglary, which may contain all the allegations necessary to sustain a conviction of larceny." *Richardson*, C. J., *State* v. *Nelson*, 8 N. H. Rep., 164.

It is believed, that the above statement of the principle, is strictly correct, and that any departure from it, is unauthorized.

It is quoted by Ch. J. *Gilchrist*, in *State* v. *Squires*, 11 N. H. Rep., 39, and *State* v. *Moore*, 12 N. H. Rep., 44, as the true rule.

It is not questioned, that in an indictment for burglary at common law, a charge of breaking and entering with *intent* to steal may be joined with a charge of *actually stealing;* and for this reason, *that burglary includes the idea of actual felony* as well as the *intent* to commit a felony.

" The crime of burglary is of two sorts. 1. Breaking and entering a dwelling house in the night time, *and stealing goods therein.* 2. Breaking and entering a dwelling-house in the night time, *with intent* to commit a felony. The circumstance of breaking and entering a dwelling-house is common and essential to both, but it does not of itself constitute the crime in either, for there must be a felony committed or intended, without one of which, the crime of burglary does not exist; and those offences are so distinct in their nature, that evidence of one will not support an indictment for the other." 2 East. Crown Law, 520.

Burglary, therefore, *includes* actual larceny, as well as intent to commit felony, and thus this form of indictment for burglary comes within the principle stated by Ch. J. *Richardson*, in the case cited, of a greater, including a less offence.

And it has been held, that an allegation of an intent to steal, is supported by proof of actual larceny; and with reason, because there can be no larceny without an intent to steal. An *unintentional larceny* would be a solecism, and the fact of breaking and entering, and stealing, may well be taken as proof of breaking, &c., with intent to steal. But though the allegation of *intent* may be *proved* by the act done, yet an *allegation* of

larceny in a house, seems materially different from an allegation of entering the house *with intent* to commit larceny. Though the act done be evidence of an intent to do *that act*, it does not necessarily qualify prior independent acts. It may be competent evidence to explain, and give character to them. It seems manifest, that one may commit a larceny in a dwelling-house, without having *entered* with such intent, and this is the precise case provided for, by section 9.

One may be a guest at an inn, or may be carried into it by force, under process of law, and afterwards steal there, and so the idea of having entered with such intent, be entirely precluded.

" Where one lawfully enters a house, it by no means follows, that because he steals while there, he entered with that purpose. To hold that for a lawful entry, a party could be punished, because after such entry he does an unlawful act, would be to find him guilty of a crime by construction." *Gilchrist*, C. J., 12 N. H. Rep., 49.

And an indictment for a burglary, by breaking, &c., and stealing, is not supported by proof of breaking with an intent to steal, not consummated. *The State* v. *Dame*, 11 N. H. Rep., 271.

" On such indictment, if the stealing itself were left unproved, and the burglarous entry, with intent to steal, were shown, the defendent must be entirely acquitted." Ch. Cr. Law, 1113 ; *Jones* v. *The State*, 11 N. H. Rep., 269.

But the larceny alone being proved, the defendant may be acquitted of the burglary and convicted of the lesser crime, included in the greater.

So an indictment for " offering to sell," and for " selling," was sustained on demurrer for duplicity, although either was an offence, as the whole description makes but *a sale*, " as every sale includes an offer to sell." *Commonwealth* v. *Eaton*, 15 Pick., 275.

So an assault and battery, is but *one crime ;* the latter includes the former. A person may be convicted of the former, and acquitted of the latter, but not *vice versa*. *Commonwealth* v. *Tuck*, 20 Pick., 361.

So, it is held, that on an indictment for *breaking and entering,* with intent to steal, the respondent may well be convicted of *entering with intent,* upon the same principle ; breaking and entering necessarily including entering. *State* v. *Moore,* 12 N. H. Rep., 45.

Now, this is not an indictment for *burglary,* although throughout the Massachusetts reports of cases, this class of crimes is erroneously so termed.

" The word burglary is a compound of the Saxon, *burgh*— a house, and *laron*— theft, and originally signified no more than the robbery of a dwelling." 3 Ch. Cr. Law, 1113.

It is essential to the crime that a *dwelling-house,* in some sense be broken. *Ibid.*

And the word *burglariously,* is necessary in the description of this crime in the indictment. 3 Ch. Cr. Law, 1113.

The feloneous assault upon the *mansion house,* which was regarded as peculiarly sacred, being the owner's castle of defence, was a crime of peculiar aggravation. It is believed that *shoemaker's shops* have not yet arrived at any such peculiar dignity.

The early decisions of the courts in Massachusetts, are confused, by their entire disregard of the fact, that burglary includes *actual larceny,* as well as an *attempt to commit larceny,* and by their attempting to apply to other offences, the reasoning of the English cases, based upon this very fact, overlooking the fact itself.

In *Commonwealth* v. *Hope,* 22 Pick., 10, the court explain the Massachusetts decisions by saying that " house breaking," has always been regarded as a " substantive crime of great aggravation," that the *intent,* to commit felony was not formerly an essential ingredient, that afterwards, when this intent was added, it was still considered that " house-breaking " was the leading and principal offence, and the feloneous intent was regarded as " a modification and aggravation of the principal crime," thus showing that the old statutes of Massachusetts, were merely an enactment of the common law crime of burglary, but that subsequent statutes have made the *intent* of breaking essential to the offence.

The Revised Statutes of New-Hampshire, ch. 215, without alluding to the crime of burglary by name, except in the caption of the chapter, have classified the various offences analogous to it, under several distinct heads.

The cases, *State* v. *Squires*, 11 N. H. Rep., 38, and *Jones* v. *The State*, 12 N. H. Rep., 269, were both indictments for *burglary*, properly so called, and the common law principles, were correctly applied; the burglarously breaking, the intent, and ac · tual larceny, making but the single offence of burglary, though *including* minor offences.

We contend, that there is a conviction of two distinct offences, in the case at bar, neither of which is included in the description of the other.

The offence of section 7, of breaking and entering a shop in the night-time, with intent to commit larceny, is complete, without further allegation of actual larceny, and the actual larceny is the distinctive element of the offence described in section 9.

Neither the spirit, nor language of section 7, can be said to include an actual larceny.

Were the additional allegation merely unmeaning, it might be immaterial; but it is descriptive of the crime, and so is material.

" Where an *actual* stealing is charged, in burglary, it must be proved; and proof of an intent to steal, is not sufficient." *Gilchrist*, C. J., 12 N. H. Rep., 271.

To support this indictment, then, by parity of reasoning, the State must prove the *actual* larceny, which is not essential to the offence described in section 7, but is the distinctive mark of the offence described in section 9; and the respondent has been put to a double trial, and stands doubly convicted, when it is clear he can legally be convicted of but one offence at one trial.

It is not the case of a greater offence including a less, nor of one description necessarily including two or more offences of the same grade; for a count may be readily drawn, " fully and plainly, substantially and formally," describing these offences severally.

II. " The court instructed the jury, that if the property was

not Eaton's, they might convict the defendant of breaking and entering with intent to steal only ; and that they might infer an intent to steal the goods of Eaton, from the fact of the breaking and entering his shop, and actually stealing the goods of another person, without any other proof of such intention."

We contend that the above instructions were erroneous.

1. Because the jury were allowed to find the defendant guilty of breaking and entering with intent to steal as alleged in the indictment, although the particular intent to steal Eaton's property was not proved at all — or in other words, that the allegation of an intent to steal Eaton's goods, was supported by proof of a general intent to steal the goods of any person.

" Where the indictment was for breaking, &c., the house of J. Davis, *with intent to steal the goods of J. W., in the said house being,* and there was no such person who had goods in the house, but J. W., was put, by mistake for J. D., the prisoner was entitled to an acquittal, and it was ruled that the words " of J. W.," could not be rejected as surplusage, for the words were sensible and material ; it being material to lay truly, the property in the goods ; and without such words, the description of the offence would not be complete." 2 East. C. L., 514.

" It is necessary to ascertain with exactness, the felony actually intended, and it must be laid in the indictment, and proved agreeably to the fact." *Gilchrist,* C. J., *Jones* v. *The State,* 11 N. H. Rep., 271 ; 2 East. C. L., 514.

" It has been held, on great consideration, that an acquittal on an indictment for burglary, in breaking and entering a dwelling-house, with an intent to steal the goods of one person, is no bar to an indictment for the same breaking and entering, with intent to steal the goods of another person." *Shaw,* C. J., 22 Pick., 7, cites *Rex* v. *Vandercom & a.,* 2 East. P. C., 519.

And this was on the ground, solely, that the offences charged are distinct.

And so stealing the separate goods of two persons at the same time constitutes two offences, and cannot be well charged in the same count. *Richardson,* C. J., 8 N. H. Rep., 164.

It is believed that no authority can be cited for an indictment,

charging an " intent to commit a larceny " generally. And if such a form be insufficient, *a fortiori*, *a false* allegation of the intent must be so.

2. Because the jury were instructed that they might infer an intent to steal the goods of Eaton, from evidence which we say was incompetent to prove such intent, to wit : " from the fact of breaking and entering his shop and actually stealing the goods of another."

We contend that the finding, authorized by the court, was not only, not upon competent evidence, but was against the settled legal presumption.

It has been seen that an allegation of *an intent* to steal the goods of a person is supported by proof, that the respondent *did* steal such goods. *Jones* v. *The State*, 11 N. H. Rep., 271.

And this is so held with reason, because it is the common rule of common sense, as well as common law, that a rational man *intends* his voluntary acts.

Had the respondent taken the goods of A., and not the goods of Eaton, the court would have been sustained in instructing the jury, that from the fact alone of taking A's goods they might infer, not only an intent to take them, but a breaking with such intent.

But here, the jury were allowed to infer directly the contrary—that the fact of taking A's goods, had some legal tendency to prove an intent to take those of Eaton.

But it may be argued, that though the taking A's goods, has *per se*, no such tendency, yet the breaking Eaton's shop, and stealing there, has a tendency to prove an intent to steal goods of Eaton.

Does the fact of breaking Eaton's shop tend to prove such intent ?

We contend that the *breaking*, of itself, has no tendency to prove *any* intent, except, perhaps, an intent maliciously to injure the real estate of Eaton.

Had the defendant, after the breaking, perpetrated a rape, murder, or other felony, the legal inference, if not the conclusive presumption, would have been, that the breaking was with intent

to commit such felony.    So that the intent is manifestly, not in-
dicated by the mere *breaking*, but by what follows.

But it may be argued that the fact of stealing *in Eaton's shop*,
tends to prove an intent to steal Eaton's property.

If, as we contend, the breaking and entering indicate, of them-
selves, no actual further intent, we have in the case, no evi-
dence of such further intent except the simple act of taking
goods, and we have left but this question : Does the act of
taking A's goods, legally tend, *per se*, to prove an intent to take
the goods of Eaton ? a question which is answered by the author-
ities already cited.

Will it be argued, that because the goods were in Eaton's
shop, therefore the respondent must have supposed them Eaton's,
and therefore must be presumed to have intended to take Eaton's
goods, though in fact he did not ?    We submit that such is not
the natural presumption of fact, and that it is contrary to the
settled presumption of law, that one intends his acts.

We contend further, that it is the *legal* and not the *actual* intent
which is to be proved.    Perhaps the intent may be proved *with-
out* proof of the fact, but it seems it cannot be proved *against*
the fact.    If one do an act with an *actual* intent to defraud A.,
but which, in fact has no tendency to defraud A., but tends to
defraud B., the act is to be charged according to its *legal* effect,
as done with intent to defraud B.

" If, from circumstances, the jury can presume, that it was
the defendant's intention to defraud J. A.—if in fact, J. N.
*might* have been defrauded, if the forgery had succeeded, it is
sufficient."    Archibold Crim. Pl., (314,) 434.

But it would seem that if J. A. could not have been in any
event defrauded, the actual intent, if proved, is not enough; it is
the legal intent which prevails.

" A jury ought to infer an intent to defraud *the person who
would have to pay* the instrument, if it were genuine, &c., though
the defrauding in particular the person who would have to pay,
&c., *did not enter the defendant's mind.*"    Archibold, 368, (308,)
126, (104.)

So in the *State* v. *John Andrews*, tried in Rockingham coun-
ty, February term, 1842, on an indictment for passing a coun-

terfeit bill, with intent to defraud Mary Ann Goss, it appeared that the defendant passed the bill to said Mary Ann, a clerk in Mrs. Peduzzi's shop, she and the defendant being the only persons present, the defendant being a stranger in Portsmouth, and not knowing said Mary A., or the owner of the shop.

On conviction, the superior court held the proof variant from the allegation, the legal *effect* and so the legal *intent* being to defraud the owner of the shop.

The *case* states, incidentally, that the evidence as to the property in the shoes " was not controverted." Probably it was not intended by the court to find *any facts*, without the intervention of the jury. The respondent's plea of *not guilty*, denied every material fact, and the question whether any, and if any, what property was taken, was to be determined by the jury, and the court could not *judicially* say, that even an uncontroverted statement of a witness, was true.

The minutes of the presiding justice will show, that but one witness — the prosecutor — was called to state any fact in regard to the ownership, and that his credibility was attacked.

The instructions of the court, upon the hypothesis that the property was not Eaton's, show, that there was doubt upon the point, and that *no admission* on the subject was made by the respondent.

The court could not judicially say, and the jury did not find, nor does it in any way appear, that the property taken was *not* the property of the foreman of the jury. Under the charge given, the conviction might, and *may* have occurred, upon such ownership, or upon *no* proof whatever, of ownership.

The conviction here, cannot well be, upon the ninth section, because the indictment charges, and the verdict finds, the breaking and entering with intent, which is the crime doubtless intended by the jury, under the instructions given. Although they might perhaps have found the defendant guilty of the larceny alone, they might well deem the question of actual larceny immaterial, when the court so regarded it.

III. The verdict should be set aside, because of the bias of the jurors, and for improper practices upon them. As our argu-

ment upon this point, we adopt the remarks of Ch. J. *Gilchrist,* in *Tenney* v. *Evans,* 13 N. H. Rep., 463, and *State* v. *Webster,* 13 N. H. Rep., 492.

The admission as evidence on trial, by the court, of the statements proved here to have been made out of court, in hearof one or more jurors, would have furnished grounds for setting aside the verdict, at once, and the statement is no less prejudicial to the defendant, made as it was.

The opinion expressed by another juror would have been sufficient cause for challenge, and the fact of the trial did not qualify him to serve.

It is believed, that no reported case can be found, where a verdict was sustained against evidence of this character, so strong as is here adduced.

*Hatch,* county solicitor, for the State.

1. The motion in arrest of judgment, for the alleged insufficiency of the indictment, cannot prevail :· (1.) Because the indictment is not double, but in fact, contains no more than is essential to describe the offence charged. The statute provides, that if any person shall, in the night time, break or enter any shop, &c., and shall therein commit larceny, he shall be punished, &c. Rev. Stat., ch. 215, § 9. The breaking, entering, and stealing, are all essential to the description of the crime actually committed by the defendant. He might have entered the shop without breaking, but he could not have committed the crime after breaking, without entering.

But the indictment charges also, that the defendant broke and entered *with intent to steal.* This allegation not only does not change the character of the offence charged, but it is absolutely necessary, (either expressed or implied,) to constitute the offence. As is well argued by the counsel for the defendant, entering, and possibly breaking, may happen under such circumstances as to negative the idea of the intent to commit larceny, though larceny may be committed after the entry. But then the crime is simple larceny, and not the defence described in the ninth section of the statute. In other words, the statute implies that the

breaking and entering, or entering, must be with intent to steal; and the finding of that intent is essential to conviction. Otherwise a petit larceny committed in the evening, by a boarder in a public house, or a workman in a shop, indeed all larcenies committed in a building in the night time, would be punishable by the severe penalties of this statute. *State* v. *Moore,* 12 N. H. Rep., 42. The words " with intent," &c., supply the place of the word " burglariously," commonly used in indictments for the common law offence of burglary or house-breaking.

And the validity of indictments in this form has long been settled. *Commonwealth* v. *Tuck,* 20 Pick., 356 ; *State* v. *Squires,* 11 N. H. Rep., 37 ; *Jones* v. *The State,* 11 N. H. Rep., 269 ; *Commonwealth* v. *Hope,* 22 Pick., 1.

And see remark of *Shaw,* C. J., in *Josslyn* v. *The Commonwealth,* 6 Met., 240 ; *Kite* v. *The Commonwealth,* 11 Met., 583 ; *Larned, et al.* v. *The Commonwealth,* 12 Met., 240.

A statute of Massachusetts provides, that every person who shall buy, receive or aid in the concealment of stolen goods, &c., shall be punished, &c. An indictment which alleged, that the defendant did receive *and* aid in the concealment of stolen goods, was held good. *Stevens* v. *The Commonwealth,* 6 Met., 241.

(2.) The objection to the indictment comes too late. *Commonwealth* v. *Tuck,* 20 Pick., 356 ; *State* v. *Squires,* 11 N. H. Rep., 37.

II. The instructions of the court to the jury, that if the property stolen were not Eaton's, they might still convict the defendant of breaking, and entering, with intent to steal Eaton's goods, was correct. *State* v. *Moore,* 12 N. H. Rep., 42 ; *Commonwealth* v. *Hope,* 22 Pick., 6 ; 1 Hale's P. C., 560 ; *Kite* v. *The Commonwealth,* 11 Met., 583.

And the evidence in the case, was sufficient to authorize a verdict of guilty of breaking, and entering, with intent to steal Eaton's goods. The defendant broke Eaton's shop, in the night time, and actually stole goods that were in Eaton's possession, and were apparently his, and in which, it was " not controverted " he had a qualified ownership. For what purpose then, did he break and enter the shop ? If he had broken and entered

only, he might have been convicted of doing so, with intent to steal the goods of the owner of the shop, though other persons had goods there, and even though the owner had in fact, no goods there. Intent to steal may be inferred, from the commission of larceny, but that is not the only evidence of the intent. A blow aimed at me, may take effect upon some other person, animal, or thing, and from the degree of its violence, as exhibited on them, may be inferred the intent as to me.

The same breaking and entering, may be laid in the same indictment, with different intents, as to steal, and to murder. *Rex* v. *Thompson*, 2 East. P. C., 515 ; 2 Leach C. C., 1105, n.

But the charge of the court to the jury, was rendered immaterial by the verdict. The instruction was, that if the property stolen, were not Eaton's, the jury might from the evidence con vict of intent to steal Eaton's property. But the jury found, in fact, that the property stolen, was Eaton's. The questions which have been argued by the defendant's counsel, could only arise upon a special verdict of *guilty of breaking and entering, with intent to steal, only.*

Moreover the case reports facts, " which were not controverted," which establish the point, that the goods were in law, Eaton's, for the purpose of this trial. 2 Russell on Crimes, 90 ; Roscoe Cr. Ev., 583 ; 2 East. P. C., 652 ; *Poole* v. *Symonds* 1 N. H. Rep., 289.

III. The objections, that Carleton Cotton, one of the jurors, was prejudiced or partial, is not well founded in fact. His affidavit shows him to be as impartial as any well informed man, selected within the limits of the county, after a former trial, well could be. It certainly would not be desirable, to select a jury of the most ignorant men in the county, and it is doubtful whether a jury could be selected in this county, who should all be utterly ignorant of what had taken place in court, and had been published in newspapers six months before.

In *Fellow's Case*, 5 Greenl. Rep., 333, it was holden to be no valid objection to a juror, that he had been called as a witness for the State at a former trial of the same indictment, to testify against the general character of the prisoner.

A verdict will not be set aside, even in a capital case, because a juror, from a mistaken idea that it was his duty to agree with the majority, assented to a verdict against his own judgment. *Commonwealth* v. *Drew,* 4 Mass. Rep., 391.

IV. The remaining objection, that statements tending to prejudice the jury, were made, during the trial, in the hearing of one of them, is not supported by evidence sufficient to disturb the verdict.

(1.) The statements were not made by the prosecutor, nor by any agent of the State, or of the prosecutor. If a verdict is to be set aside, because any unauthorized person has chosen to make remarks against the defendant, in the presence of a juror, no judgment can ever be rendered against a prisoner who has the assistance of an artful accomplice.

(2.) It does not appear, that the remarks of Bailey, in Hoyt's bar-room were heard, or understood by any juror, though one was in the room. The testimony of Bailey himself, which is offered by the defendent, shows, that the juror did not take any notice of the conversation. And the remarks of Bailey, were not made with intention to influence the jury, for Bailey did not know, that any juror was present. And the statements, though perhaps prejudicial to the character of Ayer, which was not in issue, did not tend to convey the impression that he was guilty of the crime in question.

(3.) But the objection is made too late. The conversation in the bar-room took place before Bailey was examined as a witness, and at his examination he was cross-examined as to this particular occurrence, and admitted that he had made the statements now complained of. And one of the prisoner's counsel, Mr. McMurphy, was present in the bar-room when the statements were made. Now the objection should have been made at the time, and motion should have been made to stop the trial. The prisoner cannot lie by, with knowledge of such an irregularity, and take his chance of an acquittal, without waiving the objection.

It was so ruled by *Wells,* C. J. of the municipal court, in Boston, in the case of *Gibson* and *ux.,* tried in February last,

for attempt to commit a rape.   *Rollins* v. *Ames,* 2 N. H. Rep., 349.

GILCHRIST, C. J.   The crime charged is, that the prisoner broke and entered a shop, in the night time, with intent to steal, and actually stole therefrom.

Section 7, ch. 215, Rev. Stat., provides in substance, that if any person shall break, *and* enter, any shop, &c., in the night time, with intent to steal, he shall be punished, &c.

Section 9 enacts, that if any person shall, in the night time, break, *or* enter any shop, &c., and shall therein commit larceny, he shall be punished.

Section 8 provides that if any person, with intent to commit any crime, the punishment whereof may be confinement to hard labor, shall, in the night time, either break, or enter, any building, &c., he shall be punished.

An intent to commit larceny of goods to the value of twenty dollars, would subject the offender to punishment under this section.   See section 13.

Under the 7th section, the breaking, *and* entering, must be proved, but actual larceny, need not be proved, the intent alone being sufficient; but under the 9th section, either the breaking *or* the entry is sufficient, but actual larceny must be shown.

There is a singular discrimination in the punishments awarded to these several offences.   Under 7th section, breaking, *and* entering a shop, in the night time, with intent to commit larceny. is punished by confinement for a term of from three to ten years By the 8th section, breaking, *or* entering, any building in the night time, with intent to commit any crime, &c., is punished by confinement for a term of from one to seven years.   By the 9th section, breaking *or* entering a shop in the night time, and actually committing larceny therein, is punished by confinement for a term not exceeding five years.

By these last two sections, there seems to be a greater punishment awarded, for the lesser offence.   Breaking, or entering, any *shop,* and actually stealing, is not punished so severely, as breaking, or entering, any *building,* with intent to steal.

In the present case, the prisoner is charged with breaking, and entering, with intent to steal, and actually stealing, and of this offence the jury have found him guilty.

It has been repeatedly decided in this State, that in indictments for burglary, such allegations were not objectionable. *The State* v. *Squires,* 11 N. H. Rep., 37 ; *Jones* v. *The State,* 11 N. H. Rep., 269 ; *The State* v. *Moore,* 12 N. H. Rep., 42. We do not understand that these decisions, or those upon which they were founded, went at all upon the ground that "burglary includes the idea of actual felony, as well as the intent to commit a felony," according to the view taken by the prisoner's counsel. The stealing is laid merely as evidence of the intent, in burglary, and according to the common law definition of the crime, does not aggravate it. The charge of the intent to steal, may be omitted. *The State* v. *Squires,* before cited. Hale advises, that both the intent to steal, and the stealing, should be charged ; on which, if the theft be unsupported, the prisoner may still be convicted, on his evil intention. 1 Hale, P. C., 560. In the case of *The Commonwealth* v. *Tuck,* 20 Pick., 356, the prisoner was charged with breaking, and entering a shop, in the night time, with intent to steal, and actually stealing. The prisoner moved in arrest of judgment, because the indictment alleged as one offence in one count, two distinct criminal acts, shop breaking, and larceny. The indictment was found, under section 11, ch. 126, of the Revised Statutes of Massachusets, which provided for the punishment of breaking, and entering a shop, in the night time with intent to steal. *Morton,* J., in pronouncing the judgment of the court, said, " it is difficult to distinguish the case at the bar, from burglary. An indictment setting forth, that the defendant broke, and entered the shop, with intent to steal, would be good. Can the addition of the fact that he *did steal,* which is the best evidence of his intention, vitiate the indictment ? We cannot perceive that it does. It is true, the main charge might be established without proof of the larceny, and the larceny might be established without proof of the breaking and entering; but wherein does this differ from burglary ? The principles governing both, seem to be the same."

If this be so, as a charge of larceny does not render the indictment for burglary liable to the charge of duplicity, it would not have that effect in a case like the present.

In East. P. C., 520, (n,) it said that the true definition of burglary, is breaking, &c., with intent to commit felony, of which the actual commission is so strong a presumptive evidence, that the law has adopted it, and admits it to be equivalent to a charge of the intent in the indictment.

Neither in the Revised Statutes, nor in the edition of the laws published in 1830, is the offence of breaking and entering a dwelling-house in the night time, described as burglary ; but as the ingredients of the offence are those which constitute burglary, the common law principles are applicable to it, and we agree with Mr. Justice *Morton,* that the reasoning in cases of burglary has equal force in cases like the present. The motion in arrest of judgment must therefore be overruled.

The shoes were properly laid, to be the property of Eaton. The bailee of goods attached, has a special property in them, and may maintain trover for them. *Poole* v. *Symonds,* 1 N. H. Rep., 289. Goods stolen from a washerwoman, who takes in the linen of other persons to wash, may be laid to be her property, for such persons have a possessory property. *Packer's case,* 2 East. P. C., 653. So the property in sheep taken in to agist, may be laid to be in the agister. *Woodward's case,* 2 East. P. C., 653. The property in a carriage in the coach-house of a coach-master, who is responsible for it, may be laid in the coach-master. *Taylor's case,* 1 Leach, 395. The property in goods, sent by the driver of a coach, may be laid in the driver. 2 East. P. C., 653. The property in a box belonging to a benefit society deposited in a public-house, the landlord being entitled to have a key to the box, may be laid to be in the landlord. *Rex* v. *Wymer,* 4 C. & P., 391. It has been held in Maine, that proof that the person alleged to be the owner, had a special property, or that he held it, to do some act upon it, or for the purpose of conveyance, or in trust for the benefit of another, would be sufficient to support the allegation in the indictment. *State* v. *Somerville,* 21 Me. Rep., 14.

Upon these authorities, the property in the shoes was properly laid in Eaton, who had a lien upon them for his labor, as a tailor has upon cloth delivered to him, to make a suit of clothes. *Chapman* v. *Allen,* Cro. Car., 271; *Hartford* v. *Jones,* Lord Raym., 393. It is stated in the argument of the counsel for the prisoner, that there was but one witness to prove the ownership, and that his credit was attacked. It was, perhaps, on this ground that the court gave the instruction to the jury, founded upon the contingency that the property was not Eaton's; that is, if the jury should not believe the evidence. But they did believe it, for they returned a general verdict of guilty, thus finding that the prisoner committed the offence charged in the indictment, in which is included stealing the goods of Eaton. It is, therefore, unnecessary to inquire whether the instructions founded upon the contingency that the goods were not Eaton's, were correct, and the motion in arrest of judgment is overruled.

The motion to set aside the verdict is founded in the first place, upon the evidence that Bailey, a witness for the prosecution, had made statements in the presence of a juror, prejudicial to the prisoner's character, and showing that he believed him to be guilty of the offence charged. But when he saw the juror, he ceased speaking, and he states that he did not know that any juror was present, and that the juror told him afterwards, that he did not take any notice of the conversation. The substance of the evidence is, that a juror heard a person in a bar-room, using harsh language against the prisoner. Bailey was not attempting to influence the juror, nor was he employed to do so. It would be extremely unsafe to establish it as a principle, that upon such evidence as this, a verdict might be set aside. In all communities, every trial of interest calls forth more or less idle remark, ignorant prejudice and bitter feeling, and every man who lives in the world and is competent to try a case, is exposed to meet with such inflictions. In general we admit, and lament their existence, but pass them by as evils, for which we have no remedy, without reforming the world. It is only when they assume a tangible shape, and create such a bias in the minds of jurors as to unfit them for the duty of impartially trying a case, that the

court can interfere; but we do not think the evidence here af-fords a sufficient reason for setting aside the verdict.

There is evidence, also, from French, that Mr. Cotton, one of the jurors, made statements before the trial, showing that he was prejudiced against the prisoner. The affidavit of Cotton is ad-missible in exculpation of himself, and to sustain the verdict. *Tenney* v. *Evans*, 13 N. H. Rep., 462. This is introduced, and in it he denies the statement of French. There is, therefore, simply a charge made by French, and denied by Cotton; and upon this state of facts, we should by no means be authorized to set aside the verdict.

The statements of Cotton, as to what took place after the ju-ry had retired, if offered to impeach the verdict, are incompetent. *Tenney* v. *Evans*, and cases there cited. But for the purpose of rebutting a charge made against him, his affidavit may be read. *Ibid*. The motion by the prisoner must be overruled.

*Judgment on the Verdict.*