MARCH 11, 1875. STATE *v.* GORHAM.

An indictment (founded upon Gen. Stats., ch. 264, sec. 15), charging that the respondents, with force and arms in and upon one Stephen Lohiel, of said Hart's Location, feloniously did make an assault, and him the said Stephen Lohiel in bodily fear and danger of his life then and there feloniously did put, and two bank bills for the payment of two dollars each, and of the value of two dollars each, of the national currency of the United States, and two United States treasury notes of the value of two dollars each, of the goods, chattels, and moneys of him the said Stephen Lohiel, from the person and against the will of him the said Stephen Lohiel then and there feloniously and by violence and putting in fear did steal, take, and carry away, contrary to the form of the statute," is not bad for uncertainty, duplicity, or repugnancy.

An indictment, which charges the commission of an offence which in its nature includes several inferior offences, is not, for such reason, multifarious.

A single count in an indictment may allege all the circumstances necessary to constitute two different crimes, where the offence described is a complicated one, comprehending in itself divers circumstances, each of which is an offence.

Where goods are stolen out of the possession of a bailee, they may be described in the indictment as the property of the bailor or of the bailee, although the goods were never in the real owner's possession, but in that of the bailee merely.

Bank bills are the subject of larceny, and no other description of them is required than that employed in the portion of the indictment recited in the first paragraph of these notes.

The offence of robbery is sustained by proof of a felonious taking of property from the person of another by assault, although without putting in fear. This is equally true with reference to our statute and to the common law.

An assault is any unlawful physical force put in motion, and creating a reasonable apprehension of physical injury to a human being.

Although no fear be produced nor an apparent apprehension of it created, the assault is consummated if an actual injury be inflicted.

Any forcible taking of property from the possession of another by means which overcome resistance, however slight, is a taking by the infliction of actual injury, and so is by assault.

By the practice in this state, and by rule of court, all exceptions to the charge of the judge are considered as waived, unless taken before the jury retire.

INDICTMENT, against John Gorham and William Mooney, charging the respondents with robbery from the person of one Stephen Lohiel. Plea, not guilty.

The following is a copy of the material portion of the indictment:

" The grand jurors for the state of New Hampshire, upon their oath, present, that John Gorham and William Mooney, both of Hart's Location, in the county of Carroll aforesaid, on the second day of June, in the year of our Lord one thousand eight hundred and seventy-four, at Hart's Location, in the county of Carroll aforesaid, with force and arms in and upon one Stephen Lohiel, of said Hart's Location, feloniously did make an assault, and him the said Stephen Lohiel in bodily fear and danger of his life then and there feloniously did put, and two bank bills for the payment of two dollars each, and of the value of two dollars each, of the national currency of the United States, and two United States treasury notes of the value of two dollars each, of the goods, chattels, and moneys of him the said Stephen Lohiel, from the person and against the will of him the said Stephen Lohiel then and there feloniously and by violence and putting in fear did steal, take, and carry away, contrary to the form of the statute."

The evidence on the part of the state tended to prove that on the morning of June 2, 1874, there was a " strike " among the laborers engaged in the construction of the Portland & Ogdensburg Railroad, in Hart's Location, whom the respondents joined ; that this body of men, numbering some forty or fifty, went up the line of the railroad to induce another body of workmen to join them ; that on their way they called at the house of one Peter Martel, where they procured and drank liquor, and became more or less intoxicated ; that Martel was away from home that day, and had left his place in the charge of one Stephen Lohiel, who had been employed by him as a carpenter for some two weeks previously, but on that day was left in charge of the bar ; that in the afternoon the body of strikers, including the respondents, upon their return, called at Martel's to get one of their number, who had been left there in the forenoon because too intoxicated to go with them ; that Mooney asked Lohiel how much was to pay for the care of the boy, and Lohiel replied, nothing ; that Mooney then said to Lohiel he wanted to whisper to him, and putting his left arm around Lohiel's neck, and his mouth to Lohiel's right ear, and pretending to whisper, he put his right hand in the upper vest pocket of Lohiel, on the left side, and took therefrom a roll of money, consisting of two bills of the denomination of two dollars, two bills of the denomination of one dollar, and some scrip, in all some seven or eight dollars, and passed it to Gorham, who was standing near at hand ; that Lohiel in the struggle which ensued threw Mooney to the ground ; that while they were upon the ground, Mooney being underneath, Gorham kicked him (Lohiel) in the forehead, and that others in the crowd struck him with clubs upon his body ; that Lohiel did not succeed in recovering his money ; and that the money so taken was money Lohiel had received that day from the sale of liquor at Martel's bar, and while in

charge of the same in the absence of Martel. Lohiel, on cross-examination, was asked if the bills taken might not have been Canada currency, or Southern Confederacy money, and he replied that he could not tell, that he could not read or write, but that he could tell figures and could count, and that the bills taken were what are called greenbacks. There was no evidence from any source that there was any assault upon Lohiel, or putting him in fear, before the taking of the money from the person of Lohiel by Mooney with his right hand, and then holding it in his hand as stated when Lohiel first saw it, nor up to the time when Mooney passed the money to Gorham from his own hand, except so far as the jury were warranted in so finding from the testimony of Lohiel and one Napoleon Briar, the only witnesses called by the state.

The respondents each testified that no assault was made by them or in their presence or within their knowledge upon Lohiel, and that they took no money from his person or custody, or from the premises, and that they knew of none being taken, and, in a word, denied the truth of the statements of the witnesses for the state.

After the solicitor had made his opening statement to the jury, and before any evidence was offered by the state, the respondents moved " that the indictment be quashed, on the ground of duplicity, uncertainty, and repugnancy." The court denied the motion, and the respondents excepted.

Lohiel, upon his examination in chief, testified as follows :

" In June, 1874, I resided in Hart's Location. I saw the respondents June 2, 1874, in the forenoon, between nine and ten. A big crowd was with them, thirty or forty    *    *    I did not see them again till afternoon, between four and five. They came down and into the dooryard. I lived there. Mooney wanted to know how much I should charge for the care of the boy. I said, not anything. Then he said he wanted to whisper to me ; he said, ' I should like to whisper to you.' He put his left hand round my neck and right hand in my pocket. He had his mouth to my ear and pretended to whisper ; put his right hand in my upper vest pocket on left side. I had two two dollar bills, two one dollar bills, and some scrip. I did not see his hand, but felt it—could not see it. When he drew his hand away I saw the money, and saw him hand it to Jack Gorham. I don't recollect as I heard him [Gorham] say anything. I can't tell what Gorham did with it. I squirmed round and tried to get hold of my money. I got Mooney down and I was on top of him. Gorham struck me on the forehead with his boot [shows mark to the jury] ; he struck me on top of my head once or twice, and one or two more struck me on my body with clubs. Mooney did not strike me. I did not get my money."

Before cross-examination, Lohiel testified as follows : " The same crowd came back between four and five o'clock in the afternoon. There was not quite so many ; I can't tell whether there were any different ones. I know Jack Gorham was there, also Kelley, when they came. Mooney came up, and asked me how much I should ask for keep-

ing the boy. The crowd was in the road; I was in the door. Mooney came up towards me and asked how much damage for keeping the boy; he came some twelve or fifteen feet. I was looking at the folks. The shanty was twelve or fifteen feet from the road. I went out to see if Martel was coming, and the crowd came along. About half the crowd went by, when Mooney spoke and stopped; Mooney was asking how much I should ask. Gorham was a little ways down the stream, twenty or thirty feet, in the edge of the crowd. The boy was then leaning on the door, not drunk, and went out and joined the crowd. Mooney then put his arm round my neck, and pretended he was going to whisper. The Frenchman had taken back his revolver half an hour before [loaned to Lohiel in the forenoon]. I had a jack-knife in my pocket, one blade. I probably had drank four or five times that day. He put his left hand round my neck; pretended to whisper; said he had something to say to me, but did not whisper. I did not hear anything. He put his right hand in my vest pocket and took out my money. I am forty years old next April. I weighed about one hundred and sixty-five pounds. My health has always been good; I have worked hard. I was not afraid when he put his arm round my neck; supposed he would whisper. I was looking to the crowd. The money showed some. It was most all scrip, except those four bills. I got scrip in the house—no money-drawer. Martel had key to the trunk. I felt his [Mooney's] hand in my pocket, and saw the money in his hand. I tried to grab his hand; I hollered that he was stealing my money. He passed it to Jack Gorham. Gorham kicked me with his boot. I was top of Mooney. Two or three others were striking me with clubs. My boys hollered, 'Father, they are killing you.' Most of the crowd was round me; some had clubs in their hands—four or five of them. Don't know who struck me. I had seen Gorham ten or twelve times before. I saw money in Mooney's right hand, four or five inches from my shoulder. It was between his fingers. I can't say if it was all scrip or bills in his hands. I know it was money. [Described what money he had.] I asked him to give me my money. I don't recollect that he said much of anything. He took his arm off by my squirming. I saw him hand money to Gorham, and Gorham took it. I did not testify before Esquire Pitman. I was not able. I could not open my eye for a week, nor get out of bed."

The evidence showed that the crowd obtained liquor of Lohiel at Martel's two or three times when they were there in the forenoon of that day (June 2), and that Gorham and Mooney, at the time of the alleged assault and robbery of Lohiel in the afternoon, were considerably intoxicated.

When the testimony on the part of the state was closed, the respondents moved to quash the indictment, " because the indictment alleges the bills to be the goods, chattels, and moneys of him the said Stephen Lohiel; whereas, (1) the evidence shows that they were the property of Peter Martel, and (2) bills are not goods, nor chattels, nor moneys." The court denied the motion, and the respondents excepted.

The respondents requested the court to instruct the jury " that the taking must not precede the violence and putting in fear, in the charge for robbery." The court so instructed the jury, but also instructed them that if they should find from the evidence that the respondents did feloniously steal, rob, and take from the person of Lohiel the notes or bills, or either of them, of the denomination and description charged in the indictment, by assault or by violence and putting in fear, that would be sufficient to sustain the indictment; to which ruling the respondents excepted.

The respondent's counsel, in his argument to the jury, said he "should ask the court to instruct them that, in the event of their not finding that the offence of robbery had been committed, the crime could be reduced to a petit larceny, and that then the true ownership of the bank bills alleged should be proved as averred, and that any variance would be fatal to the indictment." The judge, being occupied in looking over his minutes of the testimony, did not hear this remark, but, if he had, would have refused the instructions in the shape asked for. The instructions as to ownership of the treasury notes or bank bills would not have been different from those that were given. So far as the instructions asked for were not otherwise given to the jury, they would have been refused, and the respondents may be considered as excepting to such refusal.

The court instructed the jury as to what would constitute an assault and what would constitute a taking by violence and putting in fear, and that, as between Lohiel and these respondents, or any other stranger or mere wrong-doer, the title of Lohiel to the bills taken from him could not be questioned, he being in the actual possession and custody of the same. To the instructions given no exceptions were taken at the time, except so far as appears from the foregoing requests and motions of the respondents.

The jury returned a verdict of guilty against both respondents. After verdict, the respondents moved " to set the same aside as being against the law and the evidence." The court denied the motion, and the respondents excepted, and the case was reserved.

*J. H. Hobbs* (with whom was *Quarles*), for the respondents.

I. The respondents stand convicted for robbery as appears of record, upon an indictment charging that they at Hart's Location, June 2, A. D. 1874, with force and arms upon one Stephen Lohiel feloniously did make an assault, and him the said Stephen Lohiel in bodily fear and danger of his life then and there feloniously did put, and two bank bills for the payment of two dollars each, and of the value of two dollars each, of the national currency of the United States, and two United States treasury notes of the value of two dollars each, of the goods, chattels, and moneys of him the said Stephen Lohiel, from the person and against the will of him the said Stephen Lohiel then and there feloniously and by violence and putting in fear did steal, take, and carry away, contrary to the form of the statute.

II. An assault is defined as an attempt or offer, with force and violence, to do a corporal hurt to another; and such attempt or offer must be accompanied with such circumstances as denote at the time an intention, coupled with a present ability, of using actual violence against the person of another. 1 Russ. on Crimes 563, 564.

III. Robbery is defined at common law as the felonious and forcible taking of the property of another, from his person, or in his presence, against his will, by violence or by putting him in fear. 2 Whart. Cr. Law, 7th ed., 1678. This disjunctive way of stating the offence has been incorporated in the statutes of several states, where it is provided that if the goods be taken either in violence or by putting the owner in fear, it is sufficient. 2 Whart. Cr. Law 1699, 7th ed., and cases referred to under such statutes. But sec. 16, ch. 264, Gen. Stats. of N. H., under which the highest offence in the indictment charged in this case is created, and of which the respondents now stand convicted, provides that "If any person, by assault or by violence and putting in fear, shall feloniously steal, rob, and take from the person of another any money, goods, chattels, or other property which is the subject of larceny, he shall be imprisoned from seven to thirty years." There are then in this state two statutory methods by which the offence, whereof conviction of record appears against the respondents aforementioned, could be committed,—the first being by an assault understood and applied as above defined and explained by Russell on Crimes, and the second being by violence and putting in fear. The stealing, robbing, and taking in this case alleged is charged as having been committed by means of violence and putting in fear, the second method pointed out by the statute referred to above. See indictment. It was, therefore, error for the presiding judge to instruct the jury "that if they should find from the evidence that the respondents did feloniously steal, rob, and take from the person of Lohiel the notes or bills, or either of them, of the denomination and description charged in the indictment, by assault, that would be sufficient to sustain the indictment. Such an instruction would lead a jury to find that an offence had been committed in a way different than the indictment charged, and the doctrine of variance applies.

III. The respondents' counsel further respectfully submits and insists that the evidence does not show that there was any assault upon Lohiel, or violence, and putting him in fear, before the taking of the aforementioned property from the person of Lohiel by Mooney with his right hand as claimed, wherein it was first seen by Lohiel after the alleged felonious taking some four or five inches from his shoulder between the fingers, nor even up to the moment when Mooney is claimed to have passed the property described to Gorham from his own hand. The testimony showed that Lohiel, acting in the employ of Peter Martel as bar-tender, had sold considerable liquor on the day of the alleged transaction to various persons, among whom were the respondents; that he, the said Lohiel, had himself partaken of intoxicating liquors some four or five times on that day before the alleged

robbery, and that both Mooney and Gorham were considerably intoxicated at the time. It also appears by the case that Lohiel voluntarily went out in the afternoon to see if Martel was coming home, as he says, when the large crowd passed in which were both the respondents; that Mooney came up towards him and made an inquiry about expense of keeping a boy; that Mooney then put his left arm around his neck and said, " I should like to whisper to you;" that Lohiel at the time had some bills and scrip in his vest pocket which showed some; that Mooney, having put his mouth to Lohiel's ear and pretending to whisper to him, put his right hand at the same time into Lohiel's vest pocket and took therefrom the bills and scrip therein, which showed some as aforesaid; that Lohiel saw the same four or five inches from his shoulder in Mooney's right hand, and saw him hand the same to Jack Gorham, and could not tell what he did with it. It further appears in evidence that Lohiel was a strong, vigorous laborer, near forty years of age, weighing about one hundred and sixty-five pounds, and possessed of a one-bladed jack-knife, and that Mooney was much intoxicated withal at the time of the alleged occurrence, and that Lohiel's own testimony was,—" I was not afraid when he put his arm around my neck; supposed he would whisper. I was looking to the crowd." It also appears from the case that Lohiel " squirmed " round and tried to get hold of his money after it had been taken from the vest pocket, and while it was held by Mooney in his right hand, between the fingers, four or five inches from Lohiel's shoulder, and that Mooney thereupon took his arm off from Lohiel's neck, placed there as aforesaid, and did not say much of anything. The case reads, it will be observed, I felt his (Mooney's) hand in my pocket and saw the money, as he calls it, in his hand; then follows the statement,—" I tried to grab his hand; I hollered that he was stealing my money."

In view of the above testimony which the case develops, there was not then manifestly a scintilla of evidence that Lohiel made any resistance whatsoever, or said anything in opposition to Mooney's movements or hand, until after he saw what he calls the money in Mooney's right hand.

IV. The case also clearly shows that there was no offer or attempt on the part of either Mooney or Gorham to do any bodily hurt to Lohiel, nor that there was any violence used, nor any putting Lohiel in fear, according to his own statements, if ever, until after the alleged felonious taking of the so-called money, if any such transaction did occur, was complete in law, if under such a state of facts and allegations as appear it ever could have been made complete, which it is claimed can in no view be so regarded under the law. Had the said bank bills and scrip been feloniously taken by means of an assault properly set forth and proved, or by violence and putting in fear so properly declared and established by evidence, the offence would have been complete when the money was taken and held by Mooney in his right hand between the fingers, four or five inches from Lohiel's shoulder, for it is not necessary that the property should be actually taken

even from off the person of the prosecutor; if it is at any time in the personal custody and taken into the possession of the respondent, it is sufficient, as appears in the case where the defendant snatched out a lady's ear-ring, and succeeded in separating it from the ear, and it was afterwards found among the curls of her hair, the court held this a sufficient proof of asportation to support the indictment. *Rex* v. *Lapier*, 1 Leach 320. The least removing of the thing taken from the place where it was before is sufficient. *Case of Scott*, 5 Rogers. Rec. 169, referred to in Roscoe's Cr. Ev. 569, who remarks, that the words take and carry away, ordinarily used in an indictment for larceny, seem to mean no more than the word "take" alone; and in this connection the same learned author cites the case of the prisoner who got into a wagon, and, taking a parcel of goods which lay in the fore part, had removed it to near the tail of the wagon, when he was apprehended. The twelve judges were unanimously of the opinion that as the prisoner had removed the property from the spot where it was originally placed, with an intent to steal, it was a sufficient taking and carrying away to constitute the offence. *Rex* v. *Coslet*, 1 Leach 236; 2 East P. C. 556. For a carrying away, in order to constitute a felony, must simply be a removal of the goods from the place where they originally were, and the felon must for the instant, at least, have the entire and absolute possession of them. *Rex* v. *Cherry*, 2 East P. C. 256; Leach 536.

The language of the statute, sec. 16, above referred to, it will be remembered, reads, "If any person shall steal, rob, and take from the person of another," without employing the words carry away; and it sufficiently appears that larceny may be complete in many cases without such proof of actual transfer of the property stolen away from the premises where stolen, and that the present is a case where such a principle applies. In accordance with such doctrine it has been more recently held in *State* v. *Carr*, 13 Vt. 571, that the mere taking of another's goods out of the place where they were put, though the taker be detected before they are actually carried away, is larceny. A similar doctrine is also recognized as correct in relation to cases of robbery. See *Rex* v. *Peat*, 1 Leach 228, and 2 East P. C. 557, cited by Roscoe on Cr. Ev. 837. After the so-called money was taken and held by Mooney as aforesaid, as claimed by the state, Lohiel testifies, as has been stated, that he saw Mooney hand it to Gorham. This, it manifestly appears, from the printed case, all occurred before the struggle, which, as the case shows, ensued, and in which Lohiel threw Mooney to the ground. The evidence further discloses that Mooney had withdrawn his arm from Lohiel's neck, so placed as aforesaid, in connection with the movement to whisper to him, and while Lohiel so believed that such was Mooney's intention according to his expressed desire, before the said struggle, in which Mooney fell underneath. The case states the struggle which ensued: ensued what? The answer comes from the evidence—the taking of the bank bills described in the indictment by Mooney under

the quiet, harmless circumstances aforementioned preceding the said struggle which ensued, in which Mooney never struck; and in all the course of which alleged felonious taking, so complete prior to the said struggle, there is not a particle of testimony that there was any offer or attempt to do any bodily hurt to Lohiel, coupled with an intention at the time of using actual violence against his person, or that any was in fact done then, or that there was any fear of any, even on the part of Lohiel, who was then in the full vigor of manhood, weighing one hundred and sixty-five pounds, used to hard labor, in perfect health, armed with a large one-bladed pocket knife, and approached by one his inferior in strength, and greatly enfeebled by too excessive drinking of intoxicating liquors dealt him by this same intemperate, unprincipled ignoramus, who testified he could neither read nor write.

V. The very property that is alleged to have been so taken from Lohiel was, it is worthy of some notice, the fruit of his own criminal conduct, and that of him whom he so basely served on that day; and in several jurisdictions it has been argued in their courts, with great force and power of reasoning, that such bills so obtained by the unlawful sale of intoxicating liquors, are not the subject of larceny, and although under grave doubts it has been othewise held, the question, under the state of public sentiment that overrules decisions of courts through legislation, cannot be considered as at rest.

VI. In this connection the question occurs, On what grounds was Gorham charged in this indictment? The evidence does not show that he aided and assisted in the alleged taking of the bank bills from the person of Lohiel, or that he was accessory before the fact. The only imaginable ground must have been, it seems, his having received stolen property; and in order for him to be so rightly convicted, the principal must have been rightly convicted, and it must have been proven that he received the property with a knowledge that it was stolen, and with an intention to shelter and accommodate the thief. 2 Whart. Cr. Law, 7th ed., 1892, and General Statutes on same subject 523, 524. The testimony, it is submitted, in the event of a correct conviction of the principal having been had on different evidence, would not have warranted a conclusion of guilt against Gorham, and indeed it is not understood that the trial proceeded against him as an accessory after the fact.

VII. It may also be observed here, with respect to the taking, that it must not, as it should seem, precede the violence and putting in fear; or rather that a subsequent violence and putting in fear will not make a precedent taking, effected clandestinely, or without violence and putting in fear, amount to robbery. The words of the common-law definition of robbery are in the alternative, violence, or putting in fear; and it appears at common law that if property be taken by either of these means against the will of the party, such taking will be sufficient to constitute robbery. 2 Russ. on Crimes 71.

But the words of our statute referred to, sec. 16, ch. 264, are "violence and putting in fear," it will be remembered, and not in the alternative as at common law. In view of the evidence which this case

discloses and the foregoing principles and statutes, it is claimed that in no view can this alleged offence amount to robbery.

VIII. The testimony further proves that Mooney was seized by Lohiel and thrown to the ground, and that he was holding him down underneath himself when Gorham came up and gave his blow as described, and that all this happened after the so-called money had been taken by Mooney and passed to Gorham, and when there was no occasion, according to the evidence for Lohiel, to so throw Mooney and so hold him, either to protect himself against acts of threatened violence and attempts at injury, or to effect a recovery of the property previously taken as aforesaid and passed to Gorham. Whatever injury Lohiel received to his person on that day at that time was, it is further urged, the result and natural consequence of his own unrestrained wrongful acts, produced by his aggravated and violent temper that was considerably fired by the four or five glasses of intoxicating liquor he had, as he says, drank previously to that transaction ; and this entire case, with all its expensive and injurious consequences, may in truth be said to be the legitimate offspring of the foul groggery over which the said Lohiel presided June 2, A. D. 1874, the day that witnessed the drunken scenes that are claimed to have transpired.

IX. It is an elementary principle that the property taken must be of some value. 2 Russ. on Cr. 66. The indictment, it will be noticed, does not charge the taking of the scrip testified about, but only the bills, and the evidence was that the witness could neither read nor write, and that he could not tell whether the money as he so called it was Canada currency or Southern Confederate currency, but that the bills were what are called greenbacks. The witness further testified on this point as appears that he could not say if it was all scrip or bills he saw in Mooney's hands, but that he knew it was money.

It is further therefore urged that under such testimony the jury were not warranted in finding that the property taken was possessed of any intrinsic value, or that it consisted in fact of the bank bills, and not the scrip which is not included in the charge.

X. The bank bills so taken it appears Lohiel had received that day from the sale of liquor at Peter Martel's bar at Hart's Location, and while in charge of the same in the absence of Martel. The evidence therefore shows that the property at the time of the alleged taking belonged to Martel. Stephen Lohiel cannot be regarded as any other than a mere servant of Martel, acting in his employment as bar-tender on June 2, A. D. 1874. There is no doubt but that there may be a sufficient ownership of the goods stolen in a person who has only a special property in them ; and that they may be laid as the goods and chattels of such person in the indictment. A lessee for years, a bailee, a pawnee, a carrier, and the like, have such special property ; and the indictment will be good if it lay the property of the goods either in the real owners, or in the persons having only such special property in them. So, when goods belonging to a guest at an inn are stolen, they may be laid to be the property either of the innkeeper or the guest. 2 Russ. on Crimes 172.

The law on an indictment against the driver of a stage-coach on the prosecution of the prosecutors, considers the driver to have the bare charge of the goods belonging to the coach; but on a charge against any other person, for taking them tortiously and feloniously out of the driver's custody, he must be considered as the possessor, on account, say the court, of the endless and insurmountable difficulties and mistakes which must unavoidably arise in seeking after all the persons concerned as proprietors of a stage-coach. 2 Russ. on Crimes 175. But ordinarily if the person named as owner is merely servant to the real owner, the defendant must be acquitted—2 East P. C. 652; for a servant has not a special property in the goods, for the possession of the servant is the possession of the master. *Rex* v. *Hutchinson,* R. & R. 412. 2 Whart. Cr. Law, 7th ed., 1827.

The true ownership, when ascertainable, in all such cases should be correctly laid in order to fully protect the prisoner against a subsequent proceeding for the same offence. The record should always show the specific offence or thing which was in controversy, that the judgment may be a bar to a second proceeding at law. 1 Smith's Lead. Cases 1009. In case of an indictment in subsequent time against these respondents for feloniously stealing, taking, and robbing these bank bills, at this same time they are described as the property of Peter Martel on June 2, A. D. 1874, would the record in this case be a sufficient bar? It is expressly settled that no allegation, whether it be necessary or unnecessary, more or less particular, which is descriptive of the identity of what is legally essential to the charge in the indictment, can be rejected as surplusage. *State* v. *Noble,* 15 Me. 476. So, also, in mis-reciting a public statute. Com. Dig., P. C. 29, and in unnecessarily but erroneously inserting the ownership of stolen goods. 1 Whart. Cr. Law, 7th ed., 630. It is therefore contended that the words "of the goods, chattels, and moneys of him the said Stephen Lohiel" cannot be rejected as surplusage, if it should be deemed as unnecessarily alleged, and that the ownership for the reason assigned above is erroneously inserted, which would, in view of the above decisions, it seems, be regarded as fatal.

XI. It is a principle of law quite too elementary to require the citations of authority, that lesser offences are often regarded as merged in a charge of the higher.

XII. As a general proposition, says Hilliard, a motion for a new trial based upon facts is addressed to the sound discretion of the court, but should always be allowed if the verdict is contrary to law, or works manifest injustice to the party applying. *Cook* v. *U. S.,* 1 Iowa 56. When the jury have misunderstood or disregarded the evidence or instructions, or neglected properly to consider the facts, or overlooked prominent and essential points in them, and have failed to do substantial justice, the verdict must be set aside. *Higgins* v. *Lee,* 16 Ill. 495; Hilliard on New Trials 124.

XIII. It remains finally to notice the respondents' first motion to quash the indictment on any or all the grounds first mentioned in the

drawn case. It will be observed that the indictment concludes with the words " did steal, take, and carry away," and the words of our statute, it will be borne in mind, are steal, rob, and take, etc. The usual form which appears to have been followed in this case, in the main, reads " did steal, rob, take, and· carry away," etc. Where the words of the statute, are descriptive of the offence, the indictment must charge the offence either in the words of the statute or their equivalent. *State* v. *Gove*, 34 N. H. 510 ; *State* v. *Abbott*, 31 N. H. 439. It is indispensable that the offence be described in appropriate language, according to ordinary and correct usage. *State* v. *Canterbury*, 28 N. H. 228, 229. In every indictment the offence should be so described as not to leave it uncertain what the government really rely upon before trial to support the accusation, what they have relied upon after trial, or for what a conviction has been had if one be obtained. *State* v. *Gary*, 36 N. H. 359 ; *State* v. *Follet*, 6 N. H. 53.

*Moulton* (solicitor) and *L. D. Sawyer*, for the state.

\*Foster, C. J. C. C. By sec. 16, ch. 264, Gen Stats., it is provided,— If any person, by assault or by violence and putting in fear, shall feloniously steal, rob, and take from the person of another any money, goods, chattels, or other property which is the subject of larceny, he shall be imprisoned from seven to thirty years.

The indictment is founded upon this statute, and charges an assault, a putting in fear, and a felonious larceny from the person by violence and putting in fear.

The evidence on the part of the state does not sustain the allegation of a " putting in fear," but it tends to support all the other charges in the indictment.

1. The first question presented is, whether the indictment is bad for " uncertainty, duplicity, and repugnancy."

Duplicity, in an indictment, is the joinder of two or more offences in one count; but if the indictment charges the defendant with an offence which in its nature includes several inferior offences, as, if it charges a murder, which includes a manslaughter and an assault, it is not for this reason multifarious. 1 Bishop Cr. Proc., secs. 189, 190.

A single count may allege all the circumstances necessary to constitute two different crimes, where the offence described is a complicated one, comprehending in itself divers circumstances, each of which is an offence ; and a respondent thus charged with a greater offence may be convicted of one of lesser magnitude contained within it. Thus, an indictment charging the breaking and entering of a dwelling-house with intent to steal, will sustain a conviction of entering without breaking, with intent to steal. Upon an indictment for assaulting and obstructing an officer in the service of process, a conviction may be had for a simple assault and battery. Such indictments are not bad for

---

\* Smith, J., did not sit.

duplicity. *State* v. *Nelson*, 8 N. H. 163; *State* v. *Squires*, 11 N. H. 37; *State* v. *Moore*, 12 N. H. 42; *State* v. *Ayer*, 23 N. H. 301; *State* v. *Webster*, 39 N. H. 96. An indictment for an attempt to set fire to a building is not bad for duplicity, though it may set forth a breaking and entering of the building, as well as an attempt in the building, after the breach and entry, to set fire to it. Said DEWEY, J.,—" It is true the counts set forth a breaking and entering, in the night-time, of a certain building therein described; but that allegation is only introduced as a part of the various acts charged to have been committed by the defendant, all which combined authorize the charge of the specific offence made punishable by the statute."

It is not unusual to find, in a count properly framed, all the essential elements of a count for a minor offence, and presenting the objection of duplicity quite as strongly as the present case. Thus, in an indictment for murder or manslaughter, there is a full and technical charge of an assault and battery. *Com.* v. *Harney*, 10 Met. 422, 425. It is not, therefore, an objection to an indictment that a part of the allegations may be lopped off and yet the indictment remain sufficient. 1 Bishop Cr. Proc., sec. 191.

In *Barnes* v. *The State*, 20 Conn. 232, WAITE, J., said,—" No matters, however multifarious, will operate to make a declaration or information double, provided all taken together constitute but one connected charge, or one transaction."

In *Francisco* v. *The State*, 4 Zab. 30, it was said (with regard to an indictment charging assault, battery, and false imprisonment),—" The assault, the battery, the false imprisonment, though in themselves separately considered, are distinct offences, yet collectively they constitute but one offence."

And in 1 Dennison's Crown Cases 22, 28, Baron PARKE said, to counsel *arguendo*,—" Your objection would apply to every case of a burglary and a larceny. There would be, first, the burglary; secondly, the larceny; thirdly, the compound or simple larceny; fourthly, the stealing in a dwelling-house." And TINDAL, C. J., added,—" This is one set of facts; it is all one transaction; the prisoner could not have been embarrassed."

The application of the foregoing observations and citations to the case at bar is obvious. Here is, first, the assault and putting in fear; secondly, the simple assault; thirdly, the larceny by violence; fourthly, the larceny from the person; fifthly, the simple larceny: but they are all described as a set of facts constituting one transaction: the prisoners could not have been embarrassed. They were charged with all the facts which taken together constitute the *highest* offence comprehended in the indictment. It is not bad for duplicity. It is not bad for uncertainty. If the lesser offence of larceny from the person, or of simple larceny, had been charged, the prisoners could not have been called upon to defend against proof of the assault or the violence and putting in fear. But being charged with all the facts which constitute a robbery, the graver offence, incapable of being committed without com-

prehending in the transaction the larceny from the person by assault or by violence and putting in fear, they could not have been embarrassed by a recital in the indictment of all the particulars and distinct charges which, taken together, constitute the higher offence. Best's Principles of Evid. 386.

2. The second exception is founded upon the denial of the motion to quash the indictment, because it "alleges the bills to be goods, chattels, and moneys of him the said Stephen Lohiel ; whereas (1) the evidence shows that they were the property of Peter Martel, and (2) bills are not goods nor chattels nor moneys."

(1) The money stolen was correctly described in the indictment as the money of Lohiel.

The general rule is, that where there is a general and a special owner of the thing stolen, the indictment may lay the ownership in either the one or the other, at the election of the pleader. " If, for example, the goods are stolen from a common carrier, an allegation that they are his, or the general owner's, is equally good." 2 Bishop Cr. Proc., sec. 682. Where goods are stolen out of the possession of a bailee, they may be described in the indictment as the property of the bailor or of the bailee—2 Hale P. C. 181—although the goods were never in the real owner's possession, but in that of the bailee merely, " as, for instance, goods left at an inn"—*Rex* v. *Todd,* 2 East P. C. 653—or intrusted to his keeping. *Rex* v. *Taylor,* 1 Leach 356 ; *State* v. *Somerville,* 21 Me. 14 ; *State* v. *Ayer,* 23 N. H. 319 ; 2 Bishop Cr. Proc., secs. 53, 109.

(2) It is quite unnecessary to trouble ourselves with the technical distinctions and refined subtleties which encumber the books concerning the question whether moneys are goods or chattels, and whether bank bills are moneys ;—see 1 Bishop Crim. Law, sec. 357–359.

The indictment charges the stealing of " two bank-bills for the payment of two dollars each, * * of the goods, chattels, and moneys of him the said Stephen Lohiel." The terms included in this sentence " of the goods, chattels, and moneys," may be " lopped off" or expunged as surplusage, or they may be suffered to remain. They neither add to nor detract from the plain signification and meaning of the description of the property taken.

The statute relates to the robbery of " any money, goods, chattels, or other property which is the subject of larceny." " Bank-bills " are the subject of larceny, by ch. 260, sec. 3, Gen. Stats., and no other description of them is required then that employed in the present case. *State* v. *Mahanna,* 48 N. H. 377 ; *Hamblett* v. *State,* 18 N. H. 385.

Bank-notes are " personal property " within the meaning of the Ohio statute against robbery, which is in all substantial descriptive particulars like our own. *Turner* v. *The State,* 1 Ohio St. 442.

3. The third exception is to the instruction of the court to the jury, to this effect : " The taking must not precede the violence and putting in fear, in the charge for robbery ; but if the respondents did feloniously steal, rob, and take from the person of Lohiel the notes or bills

or either of them, of the denomination and description charged in the indictment, by assault, *or* by violence and putting in fear, that would be sufficient to sustain the indictment." The substance of this instruction is, that a larceny by assault sustains the indictment, and comes within the statute.

The statutes of most of our states against robbery are merely a reassertion of the common law. Bishop on Statutory Crimes, secs. 519, 521.

Among the common-law definitions of robbery are these:

By *East.* "A felonious taking of money or goods, to any value, from the person of another, or in his presence, against his will, by violence *or* putting him in fear." 2 East P. C. 707.

By *Blackstone.* "The felonious and forcible taking from the person of another of goods or money, to any value, by violence *or* putting him in fear." 4 Bl. Com. 242.

By Lord MANSFIELD. "A felonious taking of property from the person of another by force." *Rex* v. *Donolly,* 2 East P. C. 715, 725.

*Russell* adopts the definition of *East* as given above—1 Russ. on Crimes *867; and he says (*875),—"The words of the definition are in the alternative, ' violence *or* putting in fear ; ' and it appears that if the property be taken by either of these means, against the will of the party, such taking will be sufficient to constitute robbery. The principle, indeed, of robbery is violence.

*Wharton.* "To constitute robbery, it is not necessary that the person robbed must have been first in fear of his person or property ; if the goods be taken either in violence *or* by putting the owner in fear, it is sufficient to render the felonious taking a robbery." Wharton's Am. Cr. Law., 3d ed., 629.

*Greenleaf* adopts the definition of Lord MANSFIELD, as given above. 3 Gr. Ev., sec. 223.

*Bishop.* "To constitute a robbery there must be either some act of direct violence, *or* some demonstration from which physical injury to the person robbed may be reasonably apprehended." 2 Bishop Cr. Law, sec. 1109;—see, also, 3 Arch. Cr. Pl. 717–723 ; *U. S.* v. *Jones,* 3 Wash. C. C. 200.

*Hawkins* says,—" It is not necessary that the fact of actual fear should either be laid in the indictment, or be proved upon the trial; it is sufficient if the offence be charged to be done *violenter et contra voluntatem.*" 1 Hawk. P. C., 7th ed., 235, sec. 9.

*Foster.* " I am very clear that the circumstance of actual fear at the time of the robbery needeth not to be strictly proved. *    * And if fear be a necessary ingredient, the law, *in odium spoliatoris*, will presume fear where there appeareth to be so just a ground for it." Foster's Crown Law 128.

In accordance with these common-law definitions is the alternative definition of our own statute and the statutes of many other states. And it follows that an indictment is good which omits the words " put-

ting in fear," because it would have been good at common law.   *Com.*
v. *Humphreys*, 7 Mass. 242.   And if words equivalent to these might
well have been omitted, they may now be rejected as surplusage.

" When one draws an indictment in such a case as this, the first
question is, whether both alternatives shall be covered or only one,
and if the latter, which one.   In matter of law, this indictment would
be good, drawn on either of the alternatives without mentioning the
other; but in such a case the proofs must sustain the charge as laid.
But though, in law, when the indictment is adequate, it is sufficient to
prove either the force and violence or the putting in fear, and both
need not be shown, there is no repugnance between them ; therefore
the alternative clauses may be covered by a single count, and for most
cases it is practically best they should be."   Bishop on Stat. Cr., sec.
521.

It is " practically best," because the allegation should be broad
enough to cover the evidence which may be adduced in support of the
fact comprehended in the charge.

If the alternative clauses are combined in a single count, they will,
of course, be expressed with the use of the conjunctive " and," and
not the disjunctive " or," so that there may be no uncertainty of alle-
gation.

4. The case finds that " the respondents' counsel, in his argument
to the jury, said he ' should ask the court to instruct them that, in the
event of their not finding that the offence of robbery had been com-
mitted, the crime could be reduced to a petit larceny, and that then
the true ownership of the bank-bills alleged should be proved as aver-
red, and that any variance would be fatal to the indictment.'   The
court, being occupied in looking over his minutes of the testimony, did
not hear this remark, but if he had, would have refused the instructions
in the shape asked for.   The instructions as to ownership of the treasury
notes or bank-bills would not have been different from those that were
given.   So far as the instructions asked for were not otherwise given
to the jury, they would have been refused, and the respondents may be
considered as excepting to such refusal."

The subject-matter of this exception has been already considered
and found to be untenable.   If the court had been requested to instruct
the jury " that in the event of their not finding that the offence of rob-
bery had been committed the crime could be reduced to a petit lar-
ceny," the instruction would, doubtless, have been given.   But under
the definition of the offence, as correctly given by the court, counsel
very naturally and properly seem to have refrained from the folly and
absurdity of making such a request.

5. The fifth exception is, that " the verdict is against the law and
the evidence."   I am unable to discover any grounds for this excep-
tion, in view of the law as I have declared it; and the evidence in
the case, as reported, seems abundantly sufficient, if credited, to war-
rant and demand a verdict of guilty against both respondents,—Gor-
ham being accessory to the taking of the money with violence by Mooney,

and properly charged as a principal with Mooney in the indictment. 1 Bishop Cr. Proc. 546.

The defendants' counsel contend that the instructions were erroneous, because there was in fact no evidence of an assault.

" An assault is any unlawful physical force, partly or fully put in motion, creating a reasonable apprehension of physical injury to a human being." There need be no actual contact of person, nor any actual fear, provided physical force be actually put in motion (as by pointing a gun, whether loaded or unloaded, for example), and the motion be such as to create a well founded apprehension of physical injury. So, too, if there be no fear produced, the assault is consummated if an injury is actually inflicted. 2 Bishop Cr. Law, secs. 49–54.

What is an injury inflicted by physical force ?

Any forcible taking of property from the possession of another by means which overcome resistance, however slight, is a taking by the infliction of actual injury, and so is by assault.

Mr. East observes, " that no sudden taking of a thing unawares from the person, as by snatching anything from the hand or head, is sufficient to constitute a robbery, unless some injury be done to the person, or unless there be some previous struggle for the possession of the property." But in the later editions of Hawkins, it is said to be robbery " to snatch a basket of linen suddenly from the head of another." " The true doctrine," says Bishop, is, that such snatching will constitute robbery, provided the article is so attached to the person *or clothes* as to create resistance, however slight, not otherwise. 2 Bishop Cr. Law, sec. 1110 ; 1 Hawk. P. C., 7th ed., 236, sec. 10 ; Fisher's Crim. Dig. 446, 447.

These examples refer as well to robbery as defined by our statute, as to the common-law offence which they are cited to illustrate ; for they serve to define the actual injury which is, in the absence of a reasonable apprehension of fear, an essential ingredient of an assault.

It seems to me ridiculous to contend, therefore, that here is no evidence from which a jury might find not merely an assault, but a battery also.

Mooney " put his left arm around Loheil's neck and his mouth to Loheil's ear, and, pretending to whisper, he put his right hand in the upper vest pocket of Loheil, on the left side, and took therefrom a roll of money," etc. " Loheil tried to prevent the taking of the money, and in the struggle [to prevent the taking of the money] threw Mooney to the floor."

Loheil testified, " I felt his hand in my pocket and saw the money in his hand ; " " I saw money in Mooney's right hand, four or five inches from my shoulder; " " I tried to grab his hand; I hollered that he was stealing my money ; " " I asked him to give me my money ; " " he took his arm off by my squirming ; " " I saw him hand the money to Gorham, and Gorham took it; " " Gorham kicked me with his boot."

It would be difficult to show a clearer case of assault, if not in the

mere taking of the money out of Loheil's vest pocket, then certainly in the continuing force, struggle, and violence which ensued before Loheil was fully deprived of its possession and control.

But "the court instructed the jury as to what would constitute an assault, and what would be a taking by violence and putting in fear," and " to the instructions given no exceptions were taken at the time except such as appears from the foregoing requests and motions."

It is too late, now, to claim that there was no evidence of an assault competent to be submitted to the jury.

CUSHING, C. J.　By the statute of New Hampshire,—Gen. Stats., ch. 264, sec. 16,—" If any person, by assault or by violence and putting in fear, shall feloniously steal, rob, and take from the person of another any money, goods, chattels, or other property which is the subject of larceny, he shall be imprisoned from seven to thirty years."

The indictment in this case charges that the respondents did " feloniously make an assault, and him, the said Stephen Loheil, in bodily fear and danger of his life then and there feloniously did put, and two bank-bills, etc.,　*　*　from the person and against the will of him, the said Stephen Loheil, then and there feloniously and by violence and putting in fear did steal, take, and carry away, contrary to the form of the statute."

The first objection taken to the indictment was, that it was bad for " repugnancy, duplicity, and uncertainty." This objection appears to have been abandoned at the argument, and, indeed, I do not see how it could have been maintained. The statute contemplates that the offence may be made complete in two different modes,—one by assaulting, and the other by violence and putting in bodily fear. It certainly would not make it less an offence if the circumstances embraced all the means described in the statute. It seems as if the offence might be committed either by an actual assault and forcibly taking the property away, or by putting the party in fear by means of violence so as that he would surrender the property without its being actually forced from him ; and in either of these ways the offence would be complete. It would not be less of an offence because it united all the statutory circumstances in one offence. The different circumstances are so connected together by the copulative conjunction that they cannot be separated and distributed into several offences. I do not see, therefore, any ground for this objection.

The next objection taken was, that the property taken, being in fact Martel's, was improperly laid as that of Loheil. It is, however, well settled, as appears by the authorities cited by my brother Foster, that the property being taken from the person of Loheil may be described as his property.

It is next objected that the bills were improperly described as of the goods, chattels, and moneys of Loheil. There would seem, therefore, to be no difficulty about the description.

The next objection made is to the instruction of the jury, that if the

respondents did feloniously rob, steal, and take from the person by *assault*, the offence would be made out.   And it is said, in argument, that the indictment does not charge that the act was done by assaulting, in terms.   But suppose the indictment had charged that the respondents did make an assault upon the said Stephen Loheil, and two bank-bills for the payment of two dollars each, etc., feloniously take and carry away : could any one doubt that it was sufficiently charged that the felonious taking and carrying away was by assaulting ?   I do not see why the fact, that other circumstances are charged between the word "assault" and the words "feloniously take and carry away," alters the sense in this particular, or how the respondent could doubt that the assault was charged as the means by which he took and carried away.

As the jury found the respondents guilty of the robbery, the request to charge in reference to a finding of the less offence was immaterial.

The respondents move to set the verdict aside as being contrary to the law and the evidence.

I do not understand that we have here to deal with any of the common-law definitions of robbery.   The statute makes its own definition ; and the question will be, whether the evidence tended to prove the offence described in the statute.   Now, it appears to me that the respondents' counsel has fallen into an error in assuming that as soon as the respondents have done enough to complete the offence if nothing more were done, nothing done afterward can have anything to do in making up the offence ; in assuming, for instance, that as soon as Mooney had drawn the money from Lohiel's pocket, the offence, whatever it was, was complete, and that nothing afterwards could have anything to do with it.

I do not understand it so.   What these respondents undertook to do was, to secure the prize—to get the money out of Lohiel's pocket, and get it away, and get away themselves.   Now, that whole act of getting that money, and getting away with it, really went to make up and complete this particular robbery.   It was all one transaction.   The parts of it cannot be separated.   When they had got the money from Lohiel, and got it out of Lohiel's reach, and got themselves away, the work was completed.

It was then for the jury to say, on all the evidence, how this particular robbery was effected ; and if they were of opinion that the whole transaction which made the robbery, and enabled them to hold the money and escape, involved as well violence and putting in bodily fear as an assault, it seems to me that the evidence justified their opinion.

LADD, J.   I am of the same opinion ; and I only desire to say that I have not been able to discover, in the case as reported for our consideration, any legal question which is not settled against the respondents by the application of principles that are now quite elementary and familiar.

As to the motion to set aside the verdict as against evidence, the case shows that the money was taken from the person of Loheil by an

*assault* committed upon him by Mooney under the treacherous guise of communicating something to him in a whisper ; that Gorham stood by ready to receive it, and did receive it; and when Loheil made an effort to regain it, or prevent their getting away with it, Gorham promptly showed the part he was acting in the affair by kicking Loheil in the forehead to secure the release of his accomplice. Upon what ground it can be pretended that here was not evidence from which the jury might legally find them both guilty, as principals, of the crime of robbery as defined by the statute or by the common law, I cannot conceive.

The exceptions being all overruled, there must be

*Judgment on the verdict.*