Belknap,
No. 6279.

STATE *v*. GEORGE K. BROUGH.

May 31, 1972.

*Warren B. Rudman,* attorney general, and *Henry F. Spaloss,* assistant attorney general (*Mr. Spaloss* orally), for the State.

*Nighswander, Lord, Martin & KillKelley* (*Mr. David J. KillKelley* orally) for the defendant.

DUNCAN, J.   The defendant was indicted upon a charge of aggravated assault upon a police officer, by means of a loaded rifle, at Laconia on August 24, 1969. RSA 585:22(supp.). Trial by jury resulted in a verdict of guilty of simple assault. RSA 585:21(supp.). The questions of law presented by the defendant's exceptions to denial of motions made during the course of the trial, to certain instructions to the jury, and to the denial of certain requests for instructions were reserved and transferred by the Superior Court (*Johnson, J.*).

On August 24, 1969, Officer Hamilton of the Laconia police force went to the defendant's residence as a result of a telephone call received from one of defendant's children. Calling at the kitchen door, he was admitted by the defendant's wife, and almost immediately was confronted by the defendant, in an intoxicated condition, carrying a rifle, with a bandolier of bullets thrown over his shoulder, ordering him to leave, and threatening to kill him. In a matter of minutes the officer did leave, with his hands in the air. Aid was summoned, the defendant surrendered the gun and ammunition, and was taken into custody.

The evidence was in conflict as to whether the rifle was loaded. The officer testified that he saw the defendant loading it, that it was pointed at his stomach, and that he was placed in fear of serious injury. One bullet was missing from the

bandolier but there was no bullet in the rifle when they were finally surrendered. The defendant's testimony that the rifle was unloaded was corroborated by his wife. He also testified that because of a crippled hand, he was incapable of either loading or firing the gun under the circumstances.

The defendant's contentions fall into three major categories. He argues that the jury was erroneously instructed that if the rifle was unloaded, this was no defense unless the officer knew or should have known that it was unloaded; that the court erroneously failed to instruct the jury that it must find that the defendant intended to do actual physical harm; and that it was error to instruct the jury that there was an assault if there was an "intentional and unlawful threat of bodily injury . . . under circumstances which would create a well-grounded fear of personal injury . . . coupled with . . . present ability to carry out this threat".

It was findable upon the record that the rifle which the officer faced was loaded, or in the alternative, that it could readily be loaded, with the ammunition in the defendant's immediate possession. *State* v. *Chance,* 105 N.H. 178, 195 A.2d 748 (1963). In any event, there was no evidence of circumstances calculated to assure the officer that it was not loaded. We see no reason under our statutes to depart from the majority rule that apparent ability to inflict serious bodily harm is all that is required to be proven, to establish an assault of an aggravated nature. *Commonwealth* v. *Henson,* 259 N.E.2d 769, 773-74 (Mass. 1970). *See also* Annot., 79 A.L.R.2d 1412 (1961); Perkins, Criminal Law 117-22, 131 (2d ed. 1969). Hence we find no error in the instructions to the jury upon this issue, or in the denial of the defendant's requests numbered 5, 10 and 14. *State* v. *Lavallee,* 104 N.H. 443, 450, 189 A.2d 475, 480 (1963).

Likewise we find no error in the denial of the defendant's requests 2, 4 and 11 for instructions which would have required a finding of "actual intent to do bodily harm" on the part of the defendant. We subscribe to the view that the defendant's conduct was to be judged objectively, and not measured by any secret motive on his part. *State* v. *Cooper,* 489 P.2d 99 (Mont. 1971), overruling *State* v. *Quinlan,* 126 Mont. 52, 244 P.2d 1058 (1952).

This was not a case of a defendant charged with assault with a specific intent (*cf.* RSA 585:23), and the statutes do not establish degrees of assault, which would call for a finding of specific intent distinguishing one degree from another. *See People* v. *Jones,* 27 N.Y.2d 222, 265 N.E.2d 446 (1970). The offense with which this defendant was charged was a "general intent crime" (*People* v. *Rocha,* 3 Cal.3d 893, 899, 479 P.2d 372, 92 Cal. Rptr. 172, 176-77 (1971)), and his intent could be inferred from the evidence of his conduct. *See United States* v. *Ware,* 315 F. Supp. 1333 (D.C.W.D. Okla. 1970). Under this view, the defendant's intoxication could be no defense, and his request for instruction number 6 was properly denied. *People* v. *Rocha supra; Commonwealth* v. *Farrell,* 322 Mass. 606, 621, 78 N.E.2d 697, 705-06 (1948).

According to one version of the testimony, the defendant's threats to kill the officer were conditioned upon his refusal to leave the premises, *viz:* "Get out of the house or I'll kill you." The circumstances however afforded no defense upon this score since no claim was made that the officer was not rightfully on the premises. An unlawful demand that he leave could furnish no defense. Perkins, Criminal Law, *supra* at 131.

The defendant argues that it was error to instruct the jury that an assault is an unlawful threat of bodily injury "which would create a well-grounded fear of personal injury...", because the jury was permitted to judge the officer's fear subjectively rather than from the standpoint of a reasonable prudent man. Our statutes (RSA 585:22, 23) do not define the offenses described, and the common law did not require a finding that the victim was placed in fear, in order to convict. "The imperturbability or fortitude of a victim ... should not afford a defence to the criminal prosecution of the wrong-doer". *Commonwealth* v. *Slaney,* 345 Mass. 135, 139, 185 N.E.2d 919, 922 (1962). This is because the offense against the State is as great, whether in fact the victim is placed in fear or not. *See State* v. *Skillings,* 98 N.H. 203, 97 A.2d 202 (1953). However, the victim's state of mind was relevant to the charges made and the issues were submitted to the jury under instructions which adequately informed it that any apprehension on the part of the officer must be "well grounded" and

"reasonable". *See State* v. *Gorham,* 55 N.H. 152, 168 (1875). The instructions as a whole were consistent with contemporary common law, and not prejudicial. *Commonwealth* v. *Slaney supra,* 345 Mass. 135, 140-41, 185 N.E.2d 919, 923-24 (1962); *see* Perkins, Criminal Law, *supra* at 114-17; ALI Model Penal Code *s.* 201.10 Comment 3 (Tent. Draft No. 9, 1959) and *s.* 211.1 (Proposed Official Draft 1962). To the extent that they called for a finding which was not an essential element of the offenses, the instructions were more favorable to the defendant than the law required. *Commonwealth* v. *Slaney supra.*

After the close of the evidence the court adjourned to the following morning, for arguments and instructions to the jury. When defense counsel arrived in the courtroom the next morning, the rifle which was an exhibit in the case was hung by the shoulder sling over the top of a blackboard frame, stationed beside the door between the courtroom and the jury room. Thus suspended the weapon was nearly vertical, its barrel pointed upward on an angle away from the doorframe. Counsel was told that it had been placed there by the sheriff who had it in custody, and the sheriff declined to remove it upon his request. Thus upon their arrival, the jurors presumably passed close by the weapon as they entered the jury room.

As soon as the trial resumed, the defendant moved for a mistrial, alleging prejudice from this "startling" display. The motion was denied subject to the defendant's exception, after hearing in chambers. The court observed that the rifle had been "in full view of the jury for the better part of the trial", at times on the table before the witness stand, at times displayed to the jury, and that its cocking action had also been demonstrated.

While sound judgment could not have approved the disposition made of the exhibit pending resumption of the trial, its display in the manner disclosed by the record did not necessarily render the trial unfair. The issue presented by the motion was one of fact to be determined in the discretion of the trial court. *Brody* v. *Boutin,* 95 N.H. 103, 58 A.2d 209 (1948); *Brown* v. *Smith,* 89 N.H. 133, 193 A. 224 (1937). The rifle was properly an exhibit (*State* v. *White,* 105 N.H. 159, 162, 196 A.2d 33, 35 (1963)) and presumably was to

be available to the jurors in the jury room during their deliberations. Its presence by the jury room door on the last day of the trial did not require a finding that the trial must be discontinued in order to prevent injustice to the defendant. *Perry* v. *Faulkner,* 100 N.H. 125, 126, 120 A.2d 804, 805 (1956); *cf. Daniels* v. *Barker,* 89 N.H. 416, 200 A. 410 (1938).

Other exceptions transferred have been reviewed, and are considered to be without merit. The order is

*Exceptions overruled.*

All concurred.