Carroll
No. 6196

State of New Hampshire v. Paul S. Kawa

June 29, 1973

*Warren B. Rudman,* attorney general, and *Thomas D. Rath,* attorney (*Mr. Rath* orally), for the State.

*Orr & Reno* and *William L. Chapman (Mr. Chapman* orally) for the defendant.

Griffith, J. Defendant Paul S. Kawa was charged with second-degree murder in the death on September 1, 1969 of John L. Zajicek at Bartlett. On June 4, 1970, a jury found the defendant guilty of first-degree manslaughter and he was sentenced to not more than thirty years nor less than fifteen years in the State prison. Defendant's exceptions were reserved and transferred by the Trial Court, *Loughlin,* J.

Defendant urges in this court that the trial court erred in refusing to submit the issue of self-defense to the jury and further that if a new trial is not ordered the sentence imposed is excessive and his exception to the refusal of the trial court to grant a motion to reduce it should be sustained.

The evidence at the trial established that on the night John L. Zajicek was killed there was a dance at the Skidaddlers Ski Club in Bartlett. This was a private party attended by members of the Steinmeister Ski Club and the Skidaddlers Ski Club. On that night the defendant had driven from Manchester with a rifle in the car with the intention as he testified of hunting for bear. He stopped at the American Legion in Conway and stayed there from about 6:00 p.m.

to sometime after 10:30 p.m. consuming, according to his estimate, between six and nine drinks. On his way to Crawford Notch after leaving Conway he observed the activity at the Skidaddlers Ski Lodge and drove in, parking his car on the premises. According to the defendant he assumed he was entering a local club open to the public.

Defendant was at the party for some time drinking beer and dancing when his actions brought him to the attention of an officer of the Skidaddlers Ski Club. This officer, a Mr. Moody, determined by inquiry that Kawa was not a member of either club and appeared to be troublesome. Moody then spoke to Kawa, told him that he was at a private party and asked him to leave. Kawa was permitted to finish the beer he was drinking and the discussion between Moody and Kawa finally terminated with Moody agreeing with Kawa's statement that Moody was throwing him out. Kawa left the building without any physical altercation.

The defendant went to his car and obtained his rifle, a 30-30 Remington and loaded it. While the events from then on become confused, it appears Kawa first fired a shot into the steps of the porch on the building and, with threats, ordered into the building the people who were outside, went in and out of the building himself, and finally retreated toward his car screaming threats and obscenities at the fifty or sixty men and women at the party. Persons attempting to reason with him or disarm him were dissuaded by the threats of the rifle and he threatened to shoot through cars at people who were hiding behind them. At this point the victim John Zajicek drove into the yard in the vicinity where defendant's car was parked. Kawa yelled "Get the hell out of here" at Zajicek several times and then fired through the Zajicek car window mortally wounding Zajicek. Defendant then threw his rifle down and was overpowered by the crowd.

The defendant's testimony was that he had no memory from the time Moody asked him to leave until he was firing a shot into the porch steps. He then testified that he realized what he had done and was afraid of what the people at the party would do to him if they got him. Kawa testified that his threats and actions subsequent to the shot were directed for the purpose of making good his escape. The

Zajicek car when it arrived appeared to block his escape in his car. He testified that he struck the barrel of his rifle against the window of the Zajicek car to break the window and emphasize his order to get out and the rifle then went off. Testimony of other witnesses was that the window of the car was some distance from the muzzle of the rifle when it was fired.

The trial court is not required to submit the issue of self-defense to a jury when there is no evidence that would support a claim of self-defense. On defendant's own testimony he terrorized fifty or sixty unarmed people with shots and threats from a rifle and finally shot and killed a person in an automobile who he thought might prevent his escape. Under no interpretation of this evidence could the jury find the killing was in self-defense. One hundred years ago Chief Justice Doe said in *Aldrich v. Wright,* 53 N.H. 398, 407 (1873): "The immense value at which the law appraises human life makes it legally reasonable, that the destruction of it, as a means of averting danger, should be resorted to only when the danger is immense in respect of consequences, and exceedingly imminent in point of time." The statement of the defendant, if believed that he feared violence from the crowd he had assaulted, could not be properly found by a jury to constitute evidence of such immense imminent danger as would permit destruction of human life to prevent it. *See State v. Brough,* 112 N.H. 182, 291 A.2d 618 (1972).

In addition it should be noted that the justification of self-defense is not available to an aggressor except under circumstances not present here. The requested instruction was properly refused. *State v. Millett,* 273 A.2d 504 (Me. 1971); 1 Wharton, Criminal Law and Procedure §§ 228, 229 (Anderson ed. 1957).

The defendant urges us to adopt the reasoning of the Criminal Code, RSA 627:4 (Supp. 1972), which will be effective November 1, 1973, and defines when self-defense is justified. While the statute does not appear to be helpful to the defendant on the evidence in this case we are not disposed to interpret it before it becomes the law.

The defendant excepted to the refusal of the trial court to reconsider and reduce its sentence which admittedly was

within the statutory limits. We find no reason to disturb the sentence in this case.

*Exceptions overruled.*

All concurred.