# United States Court of Appeals
## For the First Circuit

No. 16-1405

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ A. GARCÍA-ORTIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Thompson, Kayatta, and Barron,
Circuit Judges.

Rachel Brill for appellant.
John P. Taddei, with whom Margaret A. Upshaw, Attorney, United
States Department of Justice, and Rosa Emilia Rodríguez-Vélez,
United States Attorney, were on brief, for appellee.

September 17, 2018

**KAYATTA**, **Circuit Judge**.  In his fourth time before our court, defendant-appellant José García-Ortiz ("García") asks us to vacate one of his convictions stemming from an armed robbery committed in Puerto Rico in the year 2000.  He argues that his conviction for felony murder under 18 U.S.C. § 924(j) must be vacated because armed robbery committed in violation of the Hobbs Act, 18 U.S.C. § 1951, does not qualify as a "crime of violence" under 18 U.S.C. § 924(c).  He also disputes the imposition of a restitution order and raises other issues outside the scope of this court's limited remand in United States v. García-Ortiz, 792 F.3d 184, 186 (1st Cir. 2015) ("García III").  For the following reasons, we affirm García's conviction and sentence.

## I.

As we detailed in United States v. García-Ortiz, 528 F.3d 74 (1st Cir. 2008) ("García I"), García participated in the armed robbery of a grocery store manager and his security guard escort as they were delivering around $63,000 in cash to a bank. Id. at 77.  During an exchange of gunfire in the course of the robbery, the security guard shot and killed one of García's collaborators.  Id.  In 2004, a jury convicted García of aiding and abetting a Hobbs Act robbery (count one),[1] aiding and abetting the use or carrying of a firearm during and in relation to a crime

---

[1] In violation of 18 U.S.C. §§ 2, 1951(a), (b)(1).

of violence (count two),[2] and aiding and abetting felony murder in the course of using or carrying a firearm in relation to a crime of violence (count three).[3] Id. at 78-79.

In García I, we remanded the case back to the district court so that it could modify an erroneous life sentence imposed for count one, for which the statutory maximum was twenty years. Id. at 85. After resentencing, García appealed again. We then reversed on double jeopardy grounds the conviction on count two (aiding and abetting the use or carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)) because that count was a lesser included part of count three. United States v. García-Ortiz, 657 F.3d 25, 28–29 (1st Cir. 2011) ("García II"). In García's subsequent resentencing, the district court imposed, for the first time, a restitution order. García appealed again, challenging among other things the imposition of the restitution order. García III, 792 F.3d at 188–94. We affirmed García's convictions and sentences on the remaining counts (one and three). We nevertheless ordered a limited remand of "only the restitution portion of his sentence" because the district court had mistakenly "continued" a restitution order that it had neglected to impose in the first instance. Id. at 186, 192. On remand following Garcia III, the

---

[2] In violation of 18 U.S.C. §§ 2, 924(c)(1)(A).
[3] In violation of 18 U.S.C. §§ 2, 924(j).

district court formally imposed a restitution order for $30,000, a reduction from the initial order of $60,000.

At present, García stands convicted of aiding and abetting a robbery committed in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (count one) and aiding and abetting felony murder in the course of using or carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 2, 924(j) (count three). His current sentence consists of 36 months' imprisonment for count one to run consecutively with a 216-month term for count three, plus $30,000 in restitution.

García raises several issues in this most recent appeal. Claiming a change in controlling law since we decided his third appeal, he first urges us to find unconstitutionally vague the so-called "residual clause" of 18 U.S.C. § 924(c)(3)(B). That clause treats as a "crime of violence" any felony offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." García reasons that because section 924(c)'s residual clause is unconstitutional, and because his Hobbs Act robbery conviction does not alternatively qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A)'s so-called "force clause," his felony murder conviction, which relies on section 924(c)'s definition of "crime of violence," must be vacated. Second, García argues that the district court

- 4 -

impermissibly imposed the restitution order to punish him for his success on appeal. Finally, in an effort to resuscitate and reconstitute arguments from previous appeals, García also argues that the district court should have considered an amendment to the United States Sentencing Guidelines (the "Guidelines") when considering whether to apply a mitigating role adjustment, and should not have imposed the terms of imprisonment consecutively for counts one and three. For the following reasons, we reject each of these arguments and affirm García's convictions and sentence.

## II.

### A.

García's conviction for felony murder rests on the proposition that his offense that led to a death -- armed robbery in violation of the Hobbs Act -- is a "crime of violence" under section 924(c). At the time of García's conviction, there was apparently little reason to doubt that such an offense satisfied the definition of a crime of violence contained in the residual clause of section 924(c), as García raised no objection in this vein in any of his prior appeals. García now points to two subsequent decisions of the United States Supreme Court, Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II") and Sessions v. Dimaya, 138 S. Ct. 1204 (2018), which García claims

compel the conclusion that section 924(c)'s residual clause is unconstitutionally vague.

We usually do not entertain on a subsequent appeal issues that exceed the scope of our remand mandate. See United States v. Wallace, 573 F.3d 82, 88 (1st Cir. 2009). Nevertheless, we recognize an exception when the controlling law materially changes after the case is remanded. Id. at 89. We will assume that Dimaya and Johnson II brought about such a change.

Overcoming the limited scope of our remand mandate still leaves García with another procedural hurdle: His failure to timely raise before the district court his argument that Hobbs Act robbery does not qualify under the residual clause of section 924(c)(3) would normally constitute a forfeiture, limiting us to plain error review. In similar circumstances, however, we recently overlooked such a forfeiture where, as here, a defendant failed to anticipate the Supreme Court overruling itself on a constitutional principle. See Lassend v. United States, 898 F.3d 115, 122 (1st Cir. 2018) (noting that Johnson II "expressly overruled" two prior Supreme Court cases "in relation to the [Armed Career Criminal Act]").

Turning to the merits, we find that any possible infirmity of section 924(c)'s residual clause provides García with no exculpation because his Hobbs Act robbery still qualifies as a

crime of violence under the force clause of section 924(c).  Our reasoning for finding the force clause satisfied follows.

The parties agree that García's conviction concerned Hobbs Act robbery (not extortion).  So, our task at the outset is to compare the statutory language describing the elements of Hobbs Act robbery to the definition of a "crime of violence" in the force clause, section 924(c)(3)(A).  See United States v. Faust, 853 F.3d 39, 50–51 (1st Cir.), reh'g denied, 869 F.3d 11 (1st Cir. 2017) (describing this categorical approach).  The relevant Hobbs Act language states:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall [be fined or imprisoned.]

18 U.S.C. § 1951(a).  The term "robbery" means:

> [T]he unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

Id. § 1951(b)(1) (emphasis added).  The force clause, in turn, defines a "crime of violence" as "an offense that is a felony

- 7 -

and . . . has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Id. § 924(c)(3)(A).

It would seem that the "actual or threatened force, or violence, or fear of injury" required as an element of the robbery offense satisfies the "use, attempted use, or threatened use of physical force" element of the definition of a crime of violence as long as we construe robbery's "force, or violence, or fear of injury" as requiring the use or threat of "physical force." García advocates against such a construction. He points out that the required "physical force" need be "violent force," Johnson v. United States, 559 U.S. 133, 140 (2010) (Johnson I). As an example of a robbery without such force, he posits that a person can commit Hobbs Act robbery by threatening to "devalue some intangible economic interest like a stock holding or contract right." This, however, sounds to us like Hobbs Act extortion.[4] García points to no actual convictions for Hobbs Act robbery matching or approximating his theorized scenario. And the Supreme Court has counseled that we need not consider a theorized scenario unless there is a "realistic probability" that courts would apply the law

---

[4] "[T]he obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

- 8 -

to find an offense in such a scenario.  See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007).

We also find ourselves unpersuaded that a threat to devalue an intangible economic interest constitutes the type of "injury" described in the Hobbs Act's robbery provision -- "by means of actual or threatened force, or violence, or fear of injury."  18 U.S.C. § 1951(b)(1).  Cf. United States v. Melgar-Cabrera, 892 F.3d 1053, 1066 (10th Cir. 2018) (putting someone in "fear of injury" requires the threatened use of physical force). Applying the canon of noscitur a sociis, the "fear of injury" contemplated by the statute must be like the "force" or "violence" described in the clauses preceding it.  See Yates v. United States, 135 S. Ct. 1074, 1085 (2015) (stating that canon as "a word is known by the company it keeps").  This reading and García's inability to point to any convictions for Hobbs Act robbery based upon threats to devalue intangible property convince us that Hobbs Act robbery, even when based upon a threat of injury to property, requires a threat of the kind of force described in Johnson I, that is, "violent force . . . capable of causing physical pain or injury."  559 U.S. at 140.

We likewise reject García's related claim that Hobbs Act robbery can be committed with a degree of force against a person falling short of "violent" force.  To support this claim, García imagines a scenario in which a culprit threatens to poison someone,

and claims that such an action would not involve the use or threatened use of violent force. But a threat to poison someone involves the threatened use of force capable of causing physical injury, and thus does involve violent force. See United States v. Edwards, 857 F.3d 420, 427 (1st Cir.), cert. denied, 138 S. Ct. 283 (2017) (suggesting that the knowing use of poison to cause physical harm involves physical force satisfying Johnson I). A threat to poison another imposes a "fear of injury," 18 U.S.C. § 1951(b)(1), to one's person, and Johnson I short-circuits any argument that placing someone in fear of bodily injury does not involve the use of physical force, if "force" encapsulates the concept of causing or threatening to cause bodily injury. 559 U.S. at 140; cf. United States v. Castleman, 134 S. Ct. 1405, 1417 (2014) (Scalia, J., concurring in part and concurring in judgment) (rejecting the argument that Johnson I "requires force capable of inflicting 'serious' bodily injury," as opposed simply to "force capable of causing physical pain or injury, serious or otherwise").

García also posits that perhaps the threat of injury under a Hobbs Act robbery prosecution might take the form of threatening to withhold medication from the victim, or threatening to lock a person up in a car on a hot day. But he fails to identify any convictions, or even prosecutions, matching these scenarios, nor do they strike us as realistically probable. See Edwards, 857

- 10 -

F.3d at 427 (noting the need for a realistic probability of hypothetical conviction, rather than mere "imaginative thinking").

García next argues that the offense of Hobbs Act robbery does not require as an element the "intentional threat of physical force," so it fails to satisfy the mens rea required under section 924's force clause.  We have previously rejected similar arguments.  In United States v. Ellison, the defendant argued that his conviction for federal bank robbery was not a "crime of violence" under the force clause of Guidelines section 4B1.2(a) (the "career offender guideline") because a conviction under the bank robbery statute[5] could be founded upon "intimidation" that the culprit did not intend -- that is, it could be founded merely upon behavior a reasonable person would have experienced as intimidating.  866 F.3d 32, 38 (1st Cir. 2017).  We said that because the federal bank robbery statute does require general intent, i.e., knowledge on the part of the defendant that his actions were objectively intimidating, it "has as an element the

_____

[5] 18 U.S.C. § 2113(a), which reads:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both.

use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a), such that a conviction for federal bank robbery satisfies the mens rea component of the career offender guideline's force clause. Id. at 38-40; see also United States v. Frates, 896 F.3d 93, 99 (1st Cir. 2018); cf. Carter v. United States, 530 U.S. 255, 268-70 (2000) (characterizing the offense under the federal bank robbery statute as a general intent crime, i.e., one requiring proof of knowledge of the actus reus).

The elements of Hobbs Act robbery similarly include "an implicit mens rea element of general intent -- or knowledge -- as to the actus reus of the offense." Frates, 896 F.3d at 98 (quoting Ellison, 866 F.3d at 39); see also United States v. Tobias, 33 F. App'x 547, 549 (2d Cir. 2002) (summary order) (observing that the term "robbery," as in 18 U.S.C. § 1951, "implies knowing and willful conduct"); United States v. Gray, 260 F.3d 1267, 1283 (11th Cir. 2001) (noting that circuit precedent suggested a "knowing" mens rea standard for Hobbs Act robbery and rejected a requirement of specific intent to commit the crime); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999) (knowing or willing conduct is an "implied and necessary element" of Hobbs Act robbery). We therefore reject any contention by García that the mens rea required to commit Hobbs Act robbery is less than that required to

constitute the "use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(c)(3)(A).

In a supplemental pro se brief, García next argues that a conviction for aiding and abetting a Hobbs Act robbery cannot categorically constitute a "crime of violence" under section 924's force clause because a defendant can be convicted of aiding and abetting the crime "even when he has not personally committed all the acts constituting the elements of the substantive crime aided." United States v. Sosa, 777 F.3d 1279, 1293 (11th Cir. 2015) (quoting United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004)). This argument simply states the mandate of 18 U.S.C. § 2, which makes an aider and abettor "punishable as a principal," and thus no different for purposes of the categorical approach than one who commits the substantive offense. See Lassend, 898 F.3d at 132-33.

Having rejected García's arguments, we therefore hold that because the offense of Hobbs Act robbery has as an element the use or threatened use of physical force capable of causing injury to a person or property, a conviction for Hobbs Act robbery categorically constitutes a "crime of violence" under section 924(c)'s force clause. We therefore affirm García's conviction under 18 U.S.C. § 924(j).

**B.**

The foregoing conclusion also largely resolves García's challenge to his restitution order. The Mandatory Victim Restitution Act, 18 U.S.C. § 3663A(c)(1)(A)(i), required the district court to impose such an order once García was convicted of any "crime of violence" as defined in 18 U.S.C. § 16. For the same reasons we conclude that Hobbs Act robbery qualifies as a "crime of violence" under section 924(c)'s force clause, we conclude that Hobbs Act robbery also qualifies as a "crime of violence" under section 16(a)'s force clause, which similarly defines "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). The only difference between the two provisions is that section 924's definition requires that the crime be a felony, while section 16(a) requires only "an offense," and this minor difference does not alter our conclusion because Hobbs Act robbery is certainly a felony.

García's claim that the restitution was a "punitive" response to his successful appeal is twice mistaken: Restitution is mandatory under section 3663A, which states that the district court "shall order . . . restitution" for convictions for crimes of violence, 18 U.S.C. § 3663A(a)(1), and García offers no specific allegation, beyond mere assertion, of an improper motive by the

district court.  Moreover, he does not challenge the amount of restitution required or any other aspect of the order; he just challenges the fact of its existence.  Without passing on the details or amount of the restitution order, which remain unchallenged, we cannot say, under any standard of review, that the district court erred in ordering restitution as required by Congress.

## c.

García next argues that Amendment 794 to the Guidelines, which modified the application notes for Guidelines § 3B1.2 (authorizing reductions for a defendant's mitigating role in the offense) and which came into effect in 2015 after García III, should have caused the district court to "award[] a reduction" in his Guidelines calculation.  While recognizing the limited nature of the remand in García III, García argued below and suggests now that Amendment 794's adjustments to the commentary for the mitigating-role reduction constituted a significant change in controlling legal authority permitting the district court to recalculate García's offense level, even though consideration of the issue exceeded the scope of remand.  See United States v. Bell, 988 F.2d 247, 250-51 (1st Cir. 1993) (a district court may, in its discretion, go beyond the mandate on remand when a party shows a dramatic change in controlling legal authority, unearths significant new evidence previously unavailable, or convinces the

court that blatant error left uncorrected will perpetuate a serious injustice).  The district court recognized that it had "a mandate as to only one aspect [of García's sentence]," as this court had "already affirmed [the] other part of the decision" and "sent this case to [the district court] only for restitution purposes."  It nonetheless stated that even if it were to "consider[] the downward departure for a minor [role in the offense]," it would "deem[] that this case does not warrant that."  The district court found no reason to impose the minor-role reduction because, as the court noted on the record, there was no dispute that García participated in the crime, the crime resulted in a death, García sustained a bullet wound in his back, and no co-defendants were arrested or charged against which García's relative culpability could be compared.  We therefore need not decide whether the district court erred in treating the modification of the Guidelines commentary for section 3B1.2 as failing to rise to the level of a "dramatic" change in controlling legal authority.  Any error was harmless. See generally United States v. Tavares, 705 F.3d 4, 25-26 (1st Cir. 2013) (applying harmless error analysis to procedural error in Guidelines range calculation).

**D.**

Finally, we dispose of García's argument that the terms of imprisonment for counts one and three should have run concurrently, rather than consecutively. We already decided this issue in García III and affirmed the concurrent imposition of his sentences. 792 F.3d at 193-94. In García III we noted that the district court understood that it possessed the discretion to impose the sentences for counts one and three concurrently or consecutively, and so exercised this discretion. Id. And we noted that García failed to identify any authority for the notion that the district court was required to impose concurrent sentences. Id. at 194.

García identifies no reason to depart from the law of the case; he references "no newly discovered evidence or intervening legal authority that requires us to reconsider, and there can be no credible claim that our failure to do so would work a manifest injustice in this case." United States v. Wallace, 573 F.3d 82, 92 (1st Cir. 2009) (internal quotation marks omitted). We therefore affirm our own prior determination that the district court was within its discretion to impose consecutive sentences for counts one and three.

**III.**

We affirm the convictions and sentence imposed.

- 17 -