# United States Court of Appeals
## For the First Circuit

No. 18-1018

GERARD BOULANGER,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Thompson, Selya, and Barron,
Circuit Judges.

Jonathan Shapiro, with whom Mia Teitelbaum and Shapiro &
Teitelbaum LLP were on brief, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
Scott W. Murray, United States Attorney, was on brief, for
appellee.

October 21, 2020

**THOMPSON**, **Circuit Judge**. In 2003, the petitioner, Gerard Boulanger robbed a New Hampshire drug store and used a gun to do it. Because this is illegal, he was prosecuted and, relevant here, a jury convicted him of using a firearm during a crime of violence (specifically, pharmacy robbery) in violation of 18 U.S.C. § 924(c). Then, at sentencing, the district court determined that Boulanger qualified for a sentencing enhancement under the Armed Career Criminal Act ("ACCA") because his criminal record included at least three violent felonies, chief among them: New Hampshire state court convictions for robbery and armed robbery. None of this was at issue when we affirmed Boulanger's convictions in 2006. See United States v. Boulanger, 444 F.3d 76 (1st Cir. 2006). In the intervening years, the law about what qualifies as a violent felony under ACCA and what counts as a crime of violence for § 924(c) has changed. Relying on these changes, Boulanger is back before us now, complaining that the district court mistakenly denied his second § 2255 petition because his New Hampshire robbery convictions are not violent felonies (and therefore his sentence should not be longer because of ACCA) and pharmacy robbery is not a crime of violence under § 924(c) (so he's not guilty of that at all). After carefully unravelling the relevant law and facts, we affirm.

- 2 -

**BACKGROUND**

**Boulanger's Relevant State Court Convictions**

In the 1980s, Boulanger had a spate of trouble throughout New Hampshire. In July 1980, he stole $600 from a grocery store in Portsmouth by pointing a gun at the store's clerk. That same month, he again used a gun to rob a gas station in Lee, this time getting $780. In August 1980, Boulanger similarly robbed a convenience store in Manchester and, later that month, a gas station in Epping. At some point during this spree, Boulanger gained possession of a Dover gas station's stolen bank deposit bag (with $2,057 cash inside) and hung onto it, despite knowing it was stolen. He was arrested soon after the Epping robbery and pleaded guilty to charges related to all of this activity. In chronological order of offense, Boulanger pleaded guilty to armed robbery for the Portsmouth grocery store, robbery for the Lee gas station, armed robbery for the Manchester convenience store, robbery for the Epping gas station, and receiving stolen property for keeping the Dover gas station's bank bag. Boulanger was sentenced to four to eight years in state prison on each count, with his sentences to run concurrently.

Boulanger served some time and was paroled in May 1983. In October 1983, while still on parole, Boulanger used a gun to rob a convenience store in Portsmouth and steal one store clerk's

wallet and another's purse.  He was charged with three counts of armed robbery stemming from this incident and pleaded guilty.

**Boulanger's Conviction and Post-Conviction Litigation**

Fast forward to 2003, when Boulanger used a gun to rob an East Rochester, New Hampshire, pharmacy of Oxycontin and methadone.  Boulanger, 444 F.3d at 78-79.  A jury convicted him of robberies involving controlled substances, in violation of 18 U.S.C. §§ 2118(a) and (c)(1) ("pharmacy robbery") (Count I); use of a firearm in a crime of violence, in violation of 18 U.S.C. § 924(c) (Count II); possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count III); and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count V).  Boulanger, 444 F.3d at 80-81.  The "crime of violence" in Count II referred to Count I, pharmacy robbery.  At sentencing, the district court found that Boulanger had previously been convicted of at least three violent felonies and was therefore subject to a mandatory minimum sentence of fifteen years under ACCA, 18 U.S.C. § 924(e)(1).[1]  The district court sentenced Boulanger to a total of 460 months' imprisonment.[2]

---

[1] The district court relied upon Boulanger's convictions for robbery and armed robbery in New Hampshire, as well as many other convictions that, at the time, qualified as predicate felonies under the residual clause of ACCA.

[2] Specifically, the district court sentenced Boulanger to 376 months for Count III, 84 months for Count II to be served consecutively, 300 months for Count I, to be served concurrently

- 4 -

Boulanger appealed his convictions to us and we affirmed. Boulanger, 444 F.3d at 78. He then filed his first § 2255 petition in 2007, which the district court denied.

In the decade that followed, the Supreme Court issued decisions that Boulanger came to see as relevant to his convictions, including the 2015 decision in Johnson v. United States ("Johnson II"), 576 U.S. 591, 606 (2015), where the Court held that part of ACCA's structure for defining predicate violent felonies, called the "residual clause," was void for vagueness. Generally (with exceptions we need not detail here) if a person was sentenced under ACCA because of past crimes that only qualified as violent felonies under the "residual clause," that sentence was newly understood to be unconstitutional and that defendant could petition a court for relief.

In 2016, we granted Boulanger permission to file such a petition. He filed his second § 2255 motion arguing that his sentence was improperly enhanced under ACCA (because, to him, without ACCA's residual clause, his record did not contain three violent felonies) and his conviction for Count II, using a firearm during a crime of violence, was invalid (because, he told us, Johnson II also meant that § 924(c)'s residual clause was unconstitutional and, without that clause, pharmacy robbery was

_____

with Count III, and 240 months for Count V, to be served concurrently with Counts I and III.

not a crime of violence).  The district court found Boulanger's petition to be untimely as to the § 924(c) argument and to otherwise have no merit.[3]  Kucinski v. United States, 2016 WL 4926157, at *4 (D.N.H. Sept. 15, 2016) (finding § 924(c) argument untimely); Boulanger v. United States, 2017 WL 6542156, at *6 (D.N.H. Dec. 21, 2017) (denying relief as to remaining claims). After some procedural steps not relevant here, Boulanger appealed.

**OUR TAKE**

Boulanger raises the same two challenges to his convictions before us that he did in his underlying § 2255 petition:  that his record does not contain three ACCA predicate offenses and that pharmacy robbery is not a crime of violence. Each challenge is a question of law, so we review the district court's denial of the petition de novo.  United States v. Cruz-Rivera, 904 F.3d 63, 65 (1st Cir. 2018) (reviewing de novo district

---

[3] The district court found Boulanger's petition to be untimely because it was not filed within one year of his conviction becoming final, 28 U.S.C. § 2255(f)(1), or "the date on which the right asserted was initially recognized by the Supreme Court," 28 U.S.C. § 2255(f)(3), because, according to the district court, the right Boulanger was asserting (that the residual clause of § 924(c) was unconstitutional) did not exist yet.  Kucinski v. United States, 2016 WL 4926157, at *4 (D.N.H. Sept. 15, 2016).  In 2019, the Supreme Court explicitly held § 924(c)'s residual clause to be unconstitutional.  United States v. Davis, 139 S. Ct. 2319, 2336 (2019).  In light of Davis, the government elected to waive any timeliness objections about that argument so that we could smoothly proceed to the merits.  See Wood v. Milyard, 566 U.S. 463, 474 (2012) (government may waive timeliness objections to habeas claims).

- 6 -

court's determination that offense was a crime of violence under § 924(c)); United States v. Mulkern, 854 F.3d 87, 90 (1st Cir. 2017) (reviewing de novo whether a crime was an ACCA predicate).

We begin by explaining the shared framework for evaluating whether at least three of Boulanger's prior convictions are violent felonies under ACCA and whether pharmacy robbery is a crime of violence under § 924(c).

Under the Armed Career Criminal Act, a defendant convicted of felony possession of a firearm pursuant to 18 U.S.C. § 922(g) who has three or more prior convictions for a "violent felony" or serious drug offense is subject to a fifteen-year mandatory-minimum prison sentence. 18 U.S.C. § 924(e)(1). The statute defines "violent felony" in a few ways, as a crime (punishable by a prison term exceeding one year) that "has as an element the use, attempted use, or threatened use of physical force against the person of another" (often called the "elements clause" or the "force clause"); "is burglary, arson, [] extortion, [or] involves use of explosives" (the "enumerated clause"); or "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). Id. § 924(e)(2)(B). The residual clause, we now know, is unconstitutionally vague. Johnson II, 576 U.S. at 606. Therefore, a prior conviction qualifies as a "violent felony" only if it satisfies the elements clause or the enumerated clause. There is

no question that the enumerated clause is not a factor here and that Boulanger's prior record did not contain serious drug offenses, so we are left to wrestle only with whether Boulanger's criminal history contains three convictions that qualify as "violent felonies" under the elements clause.

Similarly, Boulanger was properly convicted under 18 U.S.C. § 924(c)(1)(A) if he "use[d] or carrie[d] a firearm" during a "crime of violence" or a "drug trafficking crime." Drug trafficking is not at issue here, so we turn to the question of whether pharmacy robbery, 18 U.S.C. § 2118(a), is a "crime of violence." Congress defined "crime of violence" in § 924(c) to be a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "elements clause"), or one "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3). Since Boulanger's conviction, the Supreme Court has held that § 924(c)'s residual clause is unconstitutional. Davis, 139 S. Ct. at 2336.

We therefore must solve whether Boulanger's New Hampshire armed robberies fall within ACCA's elements clause and whether pharmacy robbery is covered by § 924(c)'s elements clause. To resolve each of these questions, we employ a "categorical approach" in which we ask whether the least culpable conduct

covered by the violated statute (here, armed robbery and pharmacy robbery) fits within the relevant elements clause. See Taylor v. United States, 495 U.S. 575, 588-89, 602 (1990); United States v. García-Ortiz, 904 F.3d 102, 106-07 (1st Cir. 2018) (applying categorical approach to § 924(c) crime of violence analysis). We do not look at the facts of Boulanger's actual crimes but presume that he engaged in "the least culpable conduct for which there is a realistic probability of a conviction under the statute." United States v. Baez-Martinez, 950 F.3d 119, 124 (1st Cir. 2020) (quoting United States v. Starks, 861 F.3d 306, 315 (1st Cir. 2017)). Such an approach "means that a prior conviction will either count or not based solely on the fact of conviction rather than on facts particular to the individual defendant's case." United States v. Faust, 853 F.3d 39, 50 (1st Cir. 2017); accord García-Ortiz, 904 F.3d at 106-07. If that "least culpable conduct," Baez-Martinez, 950 F.3d at 124, "has as an element the use, attempted use, or threatened use of physical force against the person . . . of another," it qualifies as a violent felony under ACCA or a crime of violence under § 924(c).[4] "[T]he phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S.

---

[4] Though it does not alter our analysis, note that § 924(c)'s elements clause also incorporates physical force "against the . . . property of another." 18 U.S.C. § 924(c)(3).

133, 140 (2010) (Johnson I).  With those ground rules established,

we turn to Boulanger's distinct claims.

**Boulanger's Sentencing Under the Armed Career Criminal Act**

We begin our analysis of whether New Hampshire robbery

and armed robbery each categorically qualify as crimes of violence

under ACCA by sorting out the level of force required to commit

each crime.[5]  In New Hampshire,

> [a] person commits the offense of robbery if,
> in the course of committing a theft, he:
> (a) Uses physical force on the person of
> another and such person is aware of such
> force; or

---

[5] As Boulanger tells it, he has only two convictions for armed robbery and does not cross ACCA's three-violent-felony threshold because the balance of his convictions (for robbery in New Hampshire) do not qualify as violent felonies.  The government and the district court's order track Boulanger's framing of the argument; each says that Boulanger does indeed have only two armed robbery convictions.  Both parties therefore agree that the determinative question before us is then whether a conviction under New Hampshire's robbery statute qualifies as an ACCA predicate.

However, our review of the record tells a slightly different story.  As we detailed above, per the presentence report (which was adopted by the district court at sentencing, with no relevant objections from Boulanger) Boulanger pleaded guilty to three armed robberies:  the July 1980 armed robbery of a Portsmouth grocery store, the August 1980 armed robbery of a Manchester convenience store, and the October 1983 armed robbery of a Portsmouth convenience store.

Given this record, it would not alter the outcome of Boulanger's case if we were to resolve solely the question of whether New Hampshire robbery qualifies as an ACCA predicate.  This is no matter because, as we explain below, we conclude that the level of force for robbery and armed robbery is the same and categorically qualifies both crimes as violent felonies under ACCA.

- 10 -

> (b) Threatens another with or purposely puts him in fear of immediate use of physical force.

N.H. Rev. Stat. Ann. § 636:1(I). That conduct is considered armed robbery if, while committing robbery as defined in section (I), the perpetrator

> (a) Was actually armed with a deadly weapon; or
> (b) Reasonably appeared to the victim to be armed with a deadly weapon; or
> (c) Inflicted or attempted to inflict death or serious injury on the person of another[.]

Id. § 636:1(III). The statute makes clear (and Boulanger agrees) that the same level of force is required for both robbery and armed robbery. So we have to sort out whether that force is at least the "violent force" that we know ACCA contemplates. See Johnson I, 559 U.S. at 140.

The Supreme Court has already done some of this work for us. In Stokeling v. United States, the Court considered whether Florida's robbery law, which "has as an element the use of force sufficient to overcome a victim's resistance[,] necessitates the use of 'physical force' within the meaning of [ACCA]." 139 S. Ct. 544, 548 (2019). The Court concluded that a robbery conviction in Florida did qualify as an ACCA violent felony and, in the process, shed some light on evaluating other states' robbery statutes. Relevant to our assessment of Boulanger's case, the Court held that "'physical force' in ACCA encompasses the degree of force

necessary to commit common-law robbery."  Id. at 555.  Common law robbery, in turn, involved "an unlawful taking" that was committed with enough force "to physically over[come] a victim's resistance, 'however slight' that resistance might be."  Id. at 550.

So, the operative question that, in this case, can resolve Boulanger's appeal (no matter how the parties count his prior convictions) is whether the New Hampshire robbery statute codifies common law robbery as Stokeling understood it.  If it does, then Boulanger's robbery and armed robbery convictions qualify as ACCA violent felonies.  If the statute criminalizes a larger swath of behavior, so that the "least culpable conduct for which there is a 'realistic probability' of a conviction," Baez-Martinez, 950 F.3d at 124 (citation omitted), necessitates less than "violent force," Johnson I, 559 U.S. at 140, then robbery in New Hampshire does not categorically qualify as a violent felony.

Two years after Boulanger's 1981 convictions, the New Hampshire Supreme Court addressed the level of force to sustain a conviction for the offense of robbery under § 636:1(I).  In Goodrum v. State, the New Hampshire Supreme Court affirmed the conviction of a man who "knocked [a paperboy] off the curb into the street" and made off with the pencil case in which the paperboy stored his money.  455 A.2d 1067, 1068 (N.H. 1983) (per curiam) (internal

quotations omitted).[6]  The defendant there argued that he did not use enough force to constitute robbery, but the New Hampshire Supreme Court disagreed.  Id.  The Court construed § 636:1(I) to exclude "a pickpocket who merely 'snatches' a wallet without using force of which the victim is aware," but to include cases where the perpetrator "grabbed [money] from [the victim's hand] while pushing her into a garage."  Id. (citations omitted).

When it conducted its analysis, the New Hampshire Supreme Court relied on legislative history from the 1971 enactment of the statute.  That history describes the statute as "essentially a description of common law robbery," and notes that the statute does not include a level of physical force that is so light, the victim is unaware of it.  COMM'N TO RECOMMEND CODIFICATION OF CRIMINAL LAWS, Report of the Commission to Recommend Codification of Criminal Laws, comment at 58-59 (1969), https://www.courts.state.nh.us/lawlibrary/Codification_of_New_Hampshires_Criminal_Laws/HB_904_Report.pdf (hereinafter "Commission Report").

---

[6] Boulanger tells us that Goodrum has nothing to teach because it was decided in 1983 after his convictions for his spate of 1981 robberies and armed robberies.  We disagree.  While Congress intended courts to use the "historical statute of conviction" when analyzing ACCA cases, not a modern, amended version, McNeill v. United States, 563 U.S. 816, 822 (2011), Goodrum does not create or discover anything new about the New Hampshire statute and it certainly does not change the amount of force required for conviction.  Further, the New Hampshire Supreme Court supported its holding with references to legislative history from deliberations that took place before Boulanger's convictions. See Goodrum, 455 A.2d at 1068.  Boulanger, for his part, has no issue relying on this legislative history for his own arguments.

- 13 -

According to the Commission Report, this distinction is "in recognition of the fact that robbery is essentially a threat to personal security." Id. at 58. The Commission Report also cites a prior decision from the New Hampshire Superior Court of Judicature, State v. Gorham, 55 N.H. 152 (1875), which reflects that common law robbery was understood in that state to require physical force sufficient to "creat[e] a reasonable apprehension of physical injury to a human being" or to inflict "actual injury." Id. at 152. Gorham indicated that such force would include the "taking of property from the possession of another by means which overcome resistance, however slight." Id. Considering this legislative history (which Boulanger agrees is relevant), the most informative interpretation by the New Hampshire Supreme Court, and the text of the state statute itself, we conclude that the "physical force" contemplated in the New Hampshire robbery and armed robbery statute is more than a "snatch," such as a "push[]. . . into a garage" or a "knock[]. . . off the curb." See Goodrum, 455 A.2d at 1068-69. Stokeling tells us that this is enough physical force to qualify as violent force for ACCA purposes. See 139 S. Ct. at 550-51.

But wait, there's more. Boulanger makes two points related to Stokeling that need addressing.[7]

---

[7] Boulanger also contends that the New Hampshire robbery statute is ambiguous, so we should apply the rule of lenity to

- 14 -

First, Boulanger pushes that Stokeling does not instruct that statutes codifying common law robbery necessarily qualify as violent felonies, so the government's (and now our) reliance on that case is altogether misplaced. Appellant Br. at 13-17; Appellant Reply Br. at 1-4. But, as discussed, New Hampshire common law robbery did require sufficient force to qualify as a violent felony, so to the extent the New Hampshire robbery statute codified that common law, Boulanger's argument cannot succeed. See United States v. Almonte-Núñez, 963 F.3d 58, 67 (1st Cir. 2020) ("In Stokeling, the Supreme Court held that [ACCA's elements clause] encompassed common law robbery offenses"). All of this comes back to the core question of whether the minimal force criminalized by the New Hampshire robbery statute is the amount of force covered by ACCA's elements clause.

On that front, Boulanger tells us that the force required for the New Hampshire statute is merely force that the victim is aware of and not necessarily enough to overcome resistance. That's not entirely accurate. By its own terms, theft becomes robbery under the New Hampshire robbery statute where the perpetrator "[u]ses physical force on the person of another *and* such person is

grant him relief. Appellant Br. at 17-18; Appellant Reply Br. at 6-8. We do not read the statute to be ambiguous and Boulanger doesn't give us anything to go on other than his confident claims that the ambiguity is there. Noting that, we see no need to say anything further on the issue.

aware of such force."   N.H. Rev. Stat. Ann. § 636:1 (I) (a)
(emphasis added).   The victim's awareness does not define the
"physical force" but is a separate requirement.   Plus, the New
Hampshire Supreme Court and the relevant legislative history tell
a different story than Boulanger.   The Commission Report cited in
Goodrum reflects that the legislature's settling on the phrase
"physical force" in the statute is significant.   The report
explained this phrase was selected as it was similar to the
language deployed in the "Illinois Criminal Code of 1961, § 18-
1."[8] Commission Report comment at 58-59.  And, notably, the Seventh
and Eighth Circuits have held that this same Illinois robbery
statute establishes a "violent felony" under ACCA.  See Klikno v.
United States, 928 F.3d 539, 549 (7th Cir. 2019) ("Illinois robbery
and armed robbery require 'force sufficient to overcome the
victim's resistance . . . .'" (quoting Stokeling, 139 S. Ct. at
548)); Dembry v. United States, 914 F.3d 1185, 1188 (8th Cir. 2019)
("Illinois robbery convictions qualify as violent felonies under
the force clause").   Further, Boulanger is unable to point to a
single prosecution since the statute's 1971 enactment where the
defendant engaged the low level of force he insists qualifies as

---

[8] That statute provides:  "A person commits robbery when he
takes property from the person or presence of another by the use
of force or by threatening the imminent use of force." People v.
White, 365 N.E.2d 337, 338 (Ill. 1977) (quoting Illinois Criminal
Code of 1961, § 18-1).

- 16 -

robbery in New Hampshire.  See, e.g., Stokeling, 139 S. Ct. at 554-56 (discussing state court cases interpreting statute at issue).

Second, Boulanger tries to save his case by explaining that New Hampshire robbery criminalizes when force is first used by a perpetrator when fleeing the scene of the crime.  Here, Boulanger leans hard into the idea that Stokeling qualifies common law robbery as a violent felony and argues that common law robbery did not criminalize force used in flight, so New Hampshire robbery cannot be common law robbery and is therefore not a violent felony. All of this misses the point of elements clause.  The level of force is at issue, not whether it is used before, during, or after a theft.  See N.H. Rev. Stat. Ann. § 636:1 (I) ("A person commits the offense of robbery if, in the course of committing a theft, he . . . uses physical force on the person of another." (emphasis added)).  The taking of an object is not what could make a robbery a violent felony; rather, it is the use of force.  Nothing about this timing changes the force analysis.

We tie up our last loose end by noting that Boulanger argues that because an armed robbery defendant need only to have been "actually armed" and not use the weapon while committing robbery "New Hampshire armed robbery is overbroad and does not qualify as a violent felony."  Appellant Br. at 19.  Boulanger's theory, he explains, is based on "robbery and armed robbery

- 17 -

requir[ing] the same level of force." Id. His argument therefore only has legs if we held that robbery is not a violent felony, which, as we've hammered home by now, is not our conclusion.

Seeing nothing else to assess, we hold Boulanger's robbery and armed robbery convictions are ACCA predicate crimes.

### Boulanger's Section 924(c) Conviction

The analysis of Boulanger's § 924(c) argument begins with a similar approach. We evaluate the statute and compare the minimal level of force criminalized to the conduct contemplated by § 924(c)'s elements clause.

The pharmacy robbery statute prohibits taking a controlled substance (in specific circumstances not at issue here) "by force or violence or by intimidation." 18 U.S.C. § 2118(a). So, we must determine whether the least culpable conduct that would satisfy that element of pharmacy robbery (taking "by force or violence or by intimidation") requires "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

Boulanger says the statute's disjunctive phrasing means that pharmacy robbery is not a crime of violence. Pharmacy robbery could be accomplished with "force or violence," and according to Boulanger's reading, "violence" must mean "violent force" (which is criminalized by § 924(c)) which leaves "force" to mean something

- 18 -

less than violent force (and therefore not encompassed by § 924(c)).

Boulanger points to no authority to support his point and for good reason—we have already rejected this argument in a parallel context.[9]  In García-Ortiz, we considered whether Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), constituted a crime of violence under § 924(c).  904 F.3d at 106-09.  Relevant to our case, that statute criminalizes an unlawful taking "by means of actual or threatened force, or violence, or fear of injury."  18 U.S.C. § 1951(b)(1).  We held there that the "actual or threatened force, or violence, or fear of injury" satisfied § 924(c)'s requirement of "use, attempted use, or threatened use of physical force" (and, accordingly, Hobbs Act robbery qualified as a crime of violence).  García-Ortiz, 904 F.3d at 109.  To complete our analysis, we worked backwards through the Hobbs Act robbery statute's text.  We started with the phrase "fear of injury," which we explained "requires the threatened use of physical force."  Id. at 107 (citing United States v. Melgar-Cabrera, 892 F.3d 1053, 1066 (10th Cir. 2018)).  We noted that "the threatened use of force capable of causing physical injury .

---

[9] We additionally observe that in Stokeling, the Supreme Court explained Congress's employment of the phrase "force or violence" in the "original ACCA" was "a clear reference to the common law of robbery," which, as discussed earlier in the opinion, constitutes a violent felony under ACCA.  139 S. Ct. at 550.

. . does involve violent force." Id. To support this, we applied a tool of statutory construction (in Latin, noscitur a sociis) that teaches us that a word's precise meaning is better understood by looking to the words around it and likened the words "force" and "violence" to the phrase "fear of injury" (which we already understood required physical force). Id. (citing Yates v. United States, 574 U.S. 528, 543-44 (2015)). Seeing then that "force," "violence," and "fear of injury" each necessitated "threatened or actual" "violent force . . . capable of causing physical pain or injury," Johnson I, 559 U.S. at 140, we held that Hobbs Act robbery was a "crime of violence" under § 924(c)'s force clause, García-Ortiz, 924 F.3d at 109.

Our analysis in this case tracks García-Ortiz. We begin with the pharmacy robbery statute's prohibition on "intimidation" and note that we have previously held "intimidation" to mean putting the victim in "fear of bodily harm." United States v. Ellison, 866 F.3d 32, 37 (1st Cir. 2017). We remind the reader that putting one in "fear of bodily injury" qualifies as threatening "violent force." Garcia-Ortiz, 904 F.3d at 107-08. We once more use the meaning of part of the statute (this time, "intimidation") to contextualize the precise meaning of the words around it (here, "force or violence"). Recognizing that the entirety of the relevant phrase here ("by force or violence or by intimidation") encompasses "violent force," we conclude that the

minimal level of conduct criminalized by the pharmacy robbery statute necessarily qualifies as a "crime of violence" under § 924(c).  See United States v. Burke, 943 F.3d 1236, 1238-39 (9th Cir. 2019) (controlled substance robbery "constitute[s] a crime of violence" under § 924(c)'s force clause); Kidd v. United States, 929 F.3d 578, 581 (8th Cir. 2019) ("[T]he offense of armed robbery involving controlled substances categorically qualifies as a crime of violence under the force clause of § 924(c)(3)(A).").

Boulanger claims his argument is bolstered by the legislative history, where Congress expressed concern about all types of pharmacy theft, not just thefts committed with violent force.  While it is true that Congress sought to discourage any theft of controlled substances, the legislative history hurts Boulanger as much as it helps him.  Congress also expressed concern about "serious or aggravated cases" and thefts that "terrorized the community of dispensing pharmacists."  See H.R. REP. 98-644, H.R. Rep. No. 644, 98TH Cong., 2ND Sess. 1984, 1984 U.S.C.C.A.N. 521, 1984 WL 37388 at 522, 524.

Finally, Boulanger explains that the mental state for pharmacy robbery via intimidation is mere recklessness and therefore, it cannot be a § 924(c) predicate.  Boulanger cites no relevant precedent to support this argument.  The pharmacy robbery statute itself is silent as to mental state, but we have addressed the mental state for "intimidation" in the context of the federal

bank robbery statute and held that it required that the defendant "knew that his actions were objectively intimidating." Ellison, 866 F.3d at 39 (quoting United States v. McNeal, 818 F. 3d 141, 155 (4th Cir. 2016)). Boulanger tells us this merely means that a defendant could have knowledge he was being intimidating and negligently or recklessly disregard that knowledge. We reject as unsupported the view that the statute could be read to suggest that negligent intimidation is the mens rea, and, even if we were to assume that the statute could be read to permit a conviction for reckless intimidation, Boulanger still has not explained why that would keep the conviction from being a § 924(c) predicate given the nature of this offense which requires conduct involving a specific victim. See 18 U.S.C. § 2118(a) (requiring taking a controlled substance "from a person or in the presence of another by force or violence or by intimidation" (emphasis added)); United States v. Windley, 864 F.3d 36, 38-39 (1st Cir. 2017) (finding ACCA not to cover Massachusetts Assault and Battery with a Deadly Weapon because the statute encompasses "reckless driving that results in a non-trifling injury" and thus does not "fit with ACCA's requirement that force be used against the person of another").

Though the district court denied Boulanger's petition as untimely, we affirm on different grounds, holding that pharmacy robbery is a crime of violence under the § 924(c) elements clause.

## CONCLUSION

For the foregoing reasons, the district court's order denying Boulanger's § 2255 petition is **<u>affirmed.</u>**